CLAUDE NANCE v. MERCHANTS FERTILIZER AND PHOSPHATE CO.

(Filed 29 April, 1931.)

1. **Trial D a—On motion of nonsuit all evidence is to be considered in light most favorable to plaintiff.**

   On a motion as of nonsuit the evidence which makes for the plaintiff's claim and which tends to support his cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be considered in the light most favorable to the plaintiff, and he is entitled to the benefit of every reasonable intendment thereof and every reasonable inference therefrom. C. S., 567.

2. **Waters and Water Courses C c—Evidence held sufficient to be submitted to jury on issue of actionable negligence in polluting creek.**

   In an action against a fertilizer company to recover damages for the killing of plaintiff's hogs, evidence that defendant dumped chemical refuse from its plant on a slope draining into the waters of a creek which overflowed the plaintiff's pasture, with further testimony of experts that the ingredients of the dump were poisonous, and that mud from the plaintiff's pasture contained the same chemicals, and that the death of plaintiff's hogs was due to such poison, is *held:* sufficient to be submitted to the jury on the issue of defendant's actionable negligence.

3. **Appeal and Error J c—Where evidence supports finding that witness is expert the finding is conclusive on appeal.**

   The findings of fact by the lower court in qualifying or allowing a witness to testify as an expert is conclusive on appeal when supported by evidence.

4. **Taxation I a—Failure to list personal property for taxation will not bar action against one negligently destroying it.**

   The failure of the owner of personal property to list it for taxation does not deprive him of his right of action to recover damages from one who has negligently destroyed it. Michie Supplement to N. C. Code, sec. 2971 (185).

5. **Negligence A f—Where injury would not have resulted except for defendant's negligence, plea of "act of God" will not bar recovery.**

   The defense of an "act of God" is not available in an action to recover damages for the negligent destruction of personal property when the defendant's act unites therewith as an efficient proximate cause in producing the result.

6. **Trial B e—Failure to charge jury not to consider evidence stricken out held not reversible error under facts of this case.**

   Where the motion to strike out the answer of a witness to a question is allowed, reversible error will not be held on exception to the failure of the trial court to charge the jury not to consider it, there being no special request therefor, and the failure to give such instruction not being prejudicial.

**7. Trial B c—Exception to admission of evidence will not be sustained where same evidence has been admitted without objection.**

The admission of incompetent evidence will not be held for reversible error if it has theretofore been admitted without objection.

APPEAL by defendant from *Harwood, Special Judge,* and a jury, at September Term, 1930, of MECKLENBURG. No error.

This is an action for actionable negligence brought by plaintiff, a negro, against the defendant to recover damages. The allegations of the complaint are to the effect: That plaintiff was the owner of 36 fine Hampshire and Poland China Tamworth hogs. That he had these hogs in a pasture on the west bank of Stewart's Creek, near the city of Charlotte, N. C. That the defendant owns and operates a fertilizer plant near said creek, about ¾ of a mile above plaintiff's pasture. That the natural slope and drain from defendant's plant was into said creek. That defendant carelessly and negligently caused and allowed the chemical and mineral refuse from the plant to be dumped, piled and accumulate on the border and brink and down the sloping banks of and in the immediate drains to the creek, and in allowing fluids to drain from its plant into the running stream; and that the defendant company, in this manner and by its wilful, negligent, wanton and reckless acts and omissions in causing, allowing and permitting the alleged condition, negligently, recklessly and unlawfully poisoned and polluted the creek which overflowed in the plaintiff's pasture and caused the said damages to the plaintiff. That in February, 1928, heavy or protracted rains prevailed, which caused the creek to overflow and deposit and leave water in the holes and low places in the plaintiff's hog pasture in which some of the plaintiff's hogs wallowed and drank water and thereafter became sick and died; that during the month of November, 1928, a like condition prevailed as that in February, 1928, followed by the dying of other hogs of the plaintiff, bringing the total number of hogs which became sick and died after drinking the water deposited and left in plaintiff's pasture, to 36. That the plaintiff is informed and believes, and so alleges, that the waste and refuse matter and liquid dumped and allowed by the defendant company to accumulate at and below its plant and to drain from its plant, contains foreign and poisonous substances which is destructive to animal life and that the natural drains and seepage from the land above, the liquid wastes from the defendant's acid plant together with the rains in or about February and November, 1928, washed and carried down the said stream from the defendant's plant into the plaintiff's pasture, certain acids and poisons, and that said acid and poisons killed the plaintiff's 36 hogs which were worth about $1,200.

The material allegations of the complaint were denied by the defendant.

The issues submitted to the jury and their answers thereto were as follows:

"1. Were the hogs of the plaintiff killed by the negligence of the defendant as alleged in the complaint? Answer: Yes.

2. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $1,000."

The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court, these and the necessary facts will be considered in the opinion.

*Uhlman S. Alexander and S. E. W. Kenny for plaintiff.*
*Fred W. Bynum and C. H. Gover for defendant.*

CLARKSON, J. The defendant at the close of plaintiff's evidence and at the close of all the evidence, made motions in the court below for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions and in this we see no error. It is the well settled rule of practice and the accepted position in this jurisdiction that, on a motion to nonsuit, the evidence which makes for the plaintiff's claim and which tends to support his cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.

The evidence of plaintiff on the trial below fully sustained the allegations of the complaint. The evidence was to the effect: (1) That 36 of plaintiff's hogs became sick and died in his pasture about 50 feet from Stewart's Creek, the first group of 20 in February, 1928, and the second group of 16 in October of the same year. That on both occasions water from the creek overflowed and got in the holes in the pasture, and soon thereafter the hogs drank the water and got thirsty and down, would not eat and became sick and died. Prior to drinking the water they were in good health and had no disease, the younger hogs died first. Some of the hogs were cut open "their entrails were eaten just like leaves eaten by worms." "The entrails looked like they were scalded and full of holes." They did not have cholera. "The hogs that did not drink that water did not die." (2) In searching for the cause, it was discovered that in Stewart's Creek, below defendant's plant, there was no animal life in the stream, above defendant's plant in the stream were fish and tadpoles. Before defendant's plant was located there "some pretty big perch were caught in the creek, but there are none now, there

is no animal life in the creek below the plant now, there are some small fish in the creek above the plant." At defendant's plant, on the water shed of the creek, the ground sloped to the creek and there was a slag pile about 150 feet from the creek. The ground slopes gradually from the slag pile to the creek. "Water drains from slag pile through a ditch to the creek." Stewart's Creek is about 7 feet wide in dry weather, 12 inches deep and about 300 feet from defendant's plant. Some of the slag and chemicals put there by defendant from the pile were obtained and some water out of Stewart's Creek opposite the pasture, and also some mud out of the water holes in the hog pasture. The stuff emptied on the slag pile was yellow sulphur and nitre mixed together, it came from the acid chamber of defendant's plant. (3) Some of the slag and chemical from defendant's pile, etc., taken were analyzed by Dr. H. P. Arbuckle and his associate Dr. O. J. Theis, Jr., Dr. Arbuckle being Professor of Chemistry at Davidson College and Dr. Theis associate. Both found by the court or admitted to be expert chemists. *Liles v. Pickett Mills,* 197 N. C., 722. Where there is any evidence to sustain such finding, it is conclusive on appeal. *S. v. Combs, ante,* 671. Dr. Arbuckle's testimony corroborated by Dr. Theis was to the effect that "The principal contents is sodium acid sulphate, which is a substance left in the manufacture of sulphuric acid by treating sodium nitrate with sulphuric acid; if you use sufficient sodium nitrate to equalize the acid it will make sodium sulphate. This material in the box is about 40% sulphuric acid. Sulphuric acid is one of our most corrosive acids and attacks tissue, and wood; in its diluted form it will rank as a poisonous substance and would seriously affect tissues if constantly subjected to its action. Sulphuric acid taken internally in large quantities would be poisonous, bring about serious results, even diluted will seriously affect the tissues of the body, characterized by producing extreme thirst and I suppose there would be perforation of the intestines and other organs of the body. (Defendant moved to strike the answer out. It was allowed but jury were not cautioned to disregard this evidence and defendant excepted.) I have had considerable experience with livestock; have never given any sulphuric acid to hogs and stock and could not give an opinion. Do know it would be injurious to tissues, mucous linings. Q. Would it cause death if taken in sufficient quantities? A. In my opinion it would, sulphuric acid is ranked as one of our poisons. I analyzed the contents of the two cans shown me; when opened they showed considerable pressure of gas and they had holes which indicated action of acid upon the iron in the cans; the water in one of the cans shows large quantities of sodium acid sulphate and is the same as the mud in the cigar box."

23—200

There was ample evidence to be submitted to the jury and the court below was correct in overruling defendant's motions for judgment as in case of nonsuit. The evidence was circumstantial, the probative force was for them—not for us.

In *Rhyne v. Mfg. Co.,* 182 N. C., 489, the evidence was to the effect: Where a cotton mill and settlement had diverted the natural flow of water on its lands containing sewage and filth from its mill upon the lands of the adjoining lower proprietor so as to pollute his springs and cause him to cease to use it for his cattle and his land for pasture, a permanent injunction will lie. At p. 493, the Court said: "The defendant must attain its ends, advance its interests, or serve its convenience, by some method, whether in improving its sewerage system or otherwise, which shall be in accordance with the age-old maxim that a man must use his own property in such a way as not to injure the rights of others— '*Sic utere tuo, ut alienum non laedas.*' " *Rouse v. Kinston,* 188 N. C., 1; *Finger v. Spinning Co.,* 190 N. C., 74; *Cook v. Mebane,* 191 N. C., 1; *Moses v. Morganton,* 192 N. C., 102; *S. c.,* 195 N. C., 92.

In *Masten v. Texas Co.,* 194 N. C., p. 540, the evidence was to the effect that a tank to supply large quantities of gasoline had been put into the ground by the defendant on property adjacent to that of plaintiff, and its use thus caused the seepage of gasoline into the ground in such quantities as to destroy the use of plaintiff's well of water used at his dwelling for drinking purposes, by entering into the underground water channels which gave him his water supply. The evidence was held in that case sufficient to take the issue to the jury upon defendant's motion as of nonsuit. At p. 542, the Court said: "One may no more pollute a subterranean stream than a surface stream. A person has no right to befoul, corrupt or poison underground water so that when it reaches his neighbor's land it will be unfit for use by either man or beast. The same principle applies to noxious odors. This is good morals as well as good law." Farnham Water & Water Rights, Vol. 2, sec. 446.

The defendant contends that the following questions are involved in this appeal:

(1) Can a party invoke the aid of the courts of this State for the recovery of damages to property when his conduct in connection therewith is made criminal by our statutes? The question goes too far from the evidence, but, under the facts and circumstances of this case, we think so. See *Vinegar Co. v. Hawn,* 149 N. C., p. 357.

1929 Supplement to the N. C. Code of 1927 (Michie), sec. 2971(185) is as follows: "If any person, firm or corporation whose duty it is to list any personal property whatsoever for taxation, shall fail, refuse or neglect to list same, shall remove or conceal same, or cause same to be removed or concealed, or shall aid or abet in removing or concealing

property that should be listed, such person, firm or corporation shall be guilty of a misdemeanor."

In *S. v. Snuggs,* 85 N. C., at p. 543, is the following: "The statute not only creates the offense but fixes the penalty that attaches to it, and prescribes the method of enforcing it, and the rule of law is that wherever a statute does this, no other remedy exists than the one expressly given, and no other method of enforcement can be pursued than the one prescribed. The mention of a particular mode of proceeding excludes that by indictment, and no other penalty than the one denounced can be inflicted. I Russel on Crimes, 49; *S. v. Loftin,* 2 Dev. & Bat., 31." *S. v. R. R.,* 168 N. C., 103; *S. v. Berry,* 169 N. C., 371; *Walker v. Odom,* 185 N. C., at p. 558.

In *Wooten v. Bell,* 196 N. C., at p. 657, in regard to the statute evading the payment of taxes on bonds, notes, etc., we quote: "In *Corey v. Hooker,* 171 N. C., at p. 232, it is said: 'In any event, defendants would have the right to pay the taxes into court, as they have offered to do if liable therefor.' "

The evidence was to the effect that plaintiff did not return his hogs for taxation. There is no reason why this should bar him from recovering in a civil action for actionable negligence.

(2) Can a party recover damages for injuries to his property when the proximate cause of his damages is an "Act of God?" We do not think this question is borne out by the facts on the record.

The evidence is to the effect: "Water overflowed from the creek and got in the holes and my hogs would drink that water. . . . We had a big rain in February and August, 1928. . . . I did not observe any water in the holes till high water came. . . . (A witness testified) I remember a big rain and the creek overflowed in February, 1928; don't recall ever seeing it overflow like this before but have seen it do that once since; I don't live on this creek."

In the case of *Lawrence v. Yadkin River Power Co.,* 190 N. C., at p. 670, the following instruction of the lower court was held to be a correct statement of law: "Where injuries result from an act of God, no one is responsible, whether there is any connection between an act of an individual or a corporation, and the act of God, but where there is a concurring responsibility between the act of an individual and an act of God, and where the concurring responsibility of the individual continues up to and is an efficient cause in producing damage, then it is said to be actionable negligence."

In 22 R. C. L., part sec. 17, at p. 131, we find: "When negligence of a responsible person concurs with a flood or storm or other so-called 'act of God' in producing an injury, the party guilty of such negligence will be held liable for the injurious consequences if the injury would not

have happened but for his failure to exercise care." *Luttrell v. Hardin,* 193 N. C., at p. 272.

In *Winchester v. Byers,* 196 N. C., at p. 385, is the following: "If the evidence justified a charge on unforeseen or unprecedented rain fall, no prayer was requested by defendant."

(3) Should incompetent evidence be admitted and then later stricken out and the jury not cautioned to disregard it?

This is in reference to Dr. Arbuckle's testimony: "Sulphuric acid taken internally in large quantities would be poisonous, bring about serious results, even diluted will seriously affect the tissues of the body, characterized by producing extreme thirst and I suppose there would be perforation of the intestines and other organs of the body." The defendant moved to strike the answer out. It was allowed, but complaint is made that the court below did not so instruct the jury. The defendant did not request a prayer to that effect. *Gilland v. Stone Co.,* 189 N. C., at p. 785; *Luttrell v. Hardin, supra,* at p. 266.

In *McAllister v. McAllister,* 34 N. C., 184, *Ruffin, J.,* said: "It is undoubtedly proper and in the power of the court to correct a slip by withdrawing improper evidence from the consideration of the jury or by giving such explanations of an error as will prevent it from misleading a jury." *S. v. Stewart,* 189 N. C., at p. 345.

On the present record it is not necessary to pass on the competency of this evidence, it was given by an expert chemist, and in fact perhaps is a matter of common knowledge.

(4) Should a chemist be permitted to give expert testimony in the realm of the surgeon? We think this question too broad to cover the evidence in this case. If not, the exception and assignment of error has been waived.

A hypothetical question was propounded to Dr. Arbuckle, an expert chemist, by plaintiff, and in this question every aspect of the case was set forth. This question was answered favorably to plaintiff without objection on the part of defendant.

In *Shelton v. R. R.,* 193 N. C., at p. 674, citing numerous authorities, the following observation is made: "It is thoroughly established in this State that if incompetent evidence is admitted over objection, but the same evidence has theretofore or thereafter been given in other parts of the examination without objection, the benefit of the exception is ordinarily lost."

The case was ably argued and the briefs helpful. On the whole record, we can find no prejudicial or reversible error.

No error.