TERRY BRUCE BIDDIX v. HENREDON FURNITURE INDUSTRIES, INC.

No. 8424SC1245

(Filed 16 July 1985)

1. **Nuisance § 4; Waters and Watercourses § 3.2— pollution of stream — common
   law actions not preempted by Clean Water Act**
   The North Carolina Clean Water Act, G.S. 143-211 to -215.9, does not
   preempt the common law actions of nuisance and trespass to land for the
   discharge of industrial pollutants into a stream in violation of an applicable
   NPDES permit.

2. **Nuisance § 4; Waters and Watercourses § 3.2— discharging hazardous ma-
   terials into stream — statement of statutory claim**
   Plaintiff's allegations that defendant discharged hazardous materials into
   the parties' common stream in violation of defendant's NPDES permit and that
   the discharge damaged plaintiff's property stated a claim under G.S.
   143-215.93, which imposes a strict liability for damages to property or persons
   from the discharge of oil or other hazardous substances into any waters, not-

withstanding the complaint did not identify the statute as a basis for the action.

APPEAL by plaintiff from *Lamm, Charles C., Judge*. Order entered 11 July 1984 in MITCHELL County Superior Court. Heard in the Court of Appeals 4 June 1985.

Terry Biddix, a property owner in Mitchell County, instituted a civil action against Henredon Furniture Industries, Inc. (hereinafter defendant) alleging that defendant discharged waste effluents, chemicals, toxic wastes and hazardous substances into an unnamed tributary of the North Toe River which damaged plaintiff's adjoining real property. Plaintiff's common law theories of recovery were continuing trespass of land and nuisance, for which he sought damages of $10,000 and a permanent injunction of further pollution discharges.

Defendant answered, denying that its discharges had caused any damage to plaintiff's land. As an affirmative defense, defendant alleged that its discharge of industrial waste was regulated by the North Carolina Clean Water Act of 1967 (hereinafter Clean Water Act), as amended, N.C. Gen. Stat. §§ 143-211 to -215.9 (1983), and that the statutory law preempted the common law civil actions of nuisance and trespass to land for industrial waste discharges.

Defendant moved for dismissal of plaintiff's action pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. The trial court entered an order dismissing plaintiff's action:

> [F]or reason that the . . . common law claims of nuisance and continuing trespass based upon alleged violations of Defendant's duly issued National Pollutant Discharge Elimination System permit have been preempted by laws of the Federal Government and Statutes enacted by the State Government.
> . . .

Plaintiff appealed.

*Lloyd Hise, Jr., for plaintiff.*

*Haynsworth, Baldwin, Miles, Johnson, Greaves and Edwards, by Joseph A. Rhodes, Jr., and Watson and Hunt, by Frank H. Watson, for defendant.*

WELLS, Judge.

[1]   Plaintiff brings forth one assignment of error in which he contends that the question for our review is "[w]hether the Water Use Act of 1967, . . . preempted the common law claims of nuisance and continuing trespass based on damage to real property resulting from alleged stream pollution?" Defendant asserts that the question presented is whether the Federal Water Pollution Control Act and the North Carolina Water Use Act of 1967 "preempt the common law claims of nuisance and continuing trespass based upon alleged violations of a duly issued National Pollutant Discharge Elimination System permit?" After carefully reviewing the record on appeal, we conclude that the issue presented for our determination is whether the Clean Water Act preempts the common law actions of nuisance and continuing trespass to land for the discharge of industrial waste in violation of an applicable National Pollutant Discharge Elimination System permit (hereinafter NPDES). We conclude that the common law civil actions of nuisance and trespass to land have not been abrogated for discharge of industrial pollutants in violation of a NPDES permit, and, therefore, the trial court erred in dismissing plaintiff's action.

We narrowly frame the question to be decided based upon plaintiff's factual allegations. Plaintiff alleged:

. . .

6) That the defendant has received from the North Carolina Department of Natural Resources and Community Development a permit to discharge waste water into said stream. Said permit is NPDES Permit No. NC0023582. Said permit regulates both the amount and quality of the waste water being discharged into the stream and prohibits the discharge of waste and chemicals not specifically permitted to be discharged by the permit.

7) Defendant has regularly and continually, for a period of at least three years, violated the terms and conditions of said permit by discharging chemicals and waste into the stream which are not permitted by the permit.

. . .

Plaintiff alleges that defendant's waste discharges in excess of its NPDES permit damaged his real property. Plaintiff does not allege that defendant's discharge of waste materials within the limits of its NPDES permit proximately damaged his real property, and, therefore, the issue of whether the common law civil actions of nuisance and trespass to land have been abrogated for permitted industrial waste discharges proximately damaging real property is not before us.

This appeal requires a determination of whether the trial court properly dismissed plaintiff's action for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Rules of Civil Procedure. A Rule 12(b)(6) motion is the usual and proper method of testing the legal sufficiency of the complaint. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). The trial court properly dismisses a claim where it appears, to a certainty, that the plaintiff is entitled to no relief under any state of the facts which could be proved in support of the civil action. *Alamance County v. Dept. of Human Resources*, 58 N.C. App. 748, 294 S.E. 2d 377 (1982). Plaintiff's complaint, therefore, must give sufficient notice of the events on which he bases his claim, and state sufficient facts to satisfy the substantive elements of a legally recognized claim. *Hewes v. Johnston*, 61 N.C. App. 603, 301 S.E. 2d 120 (1983). For the purpose of a Rule 12(b)(6) motion, plaintiff's allegations are treated as true. *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E. 2d 282 (1976).

Notwithstanding the trial court's order which states that federal law has abrogated the common law actions asserted by plaintiff, defendant concedes on appeal that nothing in the Federal Water Pollution Control Act (hereinafter FWPCA), as amended, 33 U.S.C. §§ 1251-1376 (1982), preempts the common law of this state concerning private actions in nuisance and trespass to land for industrial pollution. Defendant correctly recognizes that state statutory and common law rights survive enactment of a federal statute unless the federal enactment specifically preempts or conflicts with the state law. *Gilbert v. Bagley*, 492 F. Supp. 714 (M.D.N.C. 1980). Nothing in the FWPCA abrogates the common law of any state. The remaining question is whether the Clean Water Act abrogates the common law civil actions asserted by plaintiff. Defendant's argument before this court recognizes that nothing in the General Assembly's specific

statutory language abrogates these common law civil actions; defendant relies on interpretation of the nature and scope of the Clean Water Act to support the trial court's order.

In determining the General Assembly's intent, we must apply time honored rules of statutory construction. An appellate court must look to the purpose and spirit of the statute and what the enactment sought to accomplish, considering both the history and circumstances surrounding the legislation and the reason for its enactment. *Black v. Littlejohn*, 312 N.C. 626, 325 S.E. 2d 469 (1985). A presumption exists that the legislature was fully cognizant of prior and existing law within the subject matter of its enactment. *State v. Benton*, 276 N.C. 641, 174 S.E. 2d 793 (1970). When the General Assembly legislates with respect to the subject matter of a common law rule, the legislation supplants the common law, *McMichael v. Proctor*, 243 N.C. 479, 91 S.E. 2d 231 (1956); *Christenbury v. Hedrick*, 32 N.C. App. 708, 234 S.E. 2d 3 (1977), however, statutes in abrogation of the common law are strictly construed, *Ellington v. Bradford*, 242 N.C. 159, 86 S.E. 2d 925 (1955). That a legislative enactment must be strictly construed does not require "that the statute shall be stintingly or even narrowly construed, . . . but it means that everything shall be excluded from its operation which does not clearly come within the scope of the language used." *State v. Whitehurst*, 212 N.C. 300, 193 S.E. 657 (1937) (citation omitted); *see generally*, R. Strong, 12 N.C. Index 3d, *Statutes* § 5.2 (1978). In determining the General Assembly's intent, courts rationally construe the legislative enactment recognizing that the General Assembly does not intend "untoward results." *Comr. of Insurance v. Automobile Rate Office*, 294 N.C. 60, 241 S.E. 2d 324 (1978).

Regulation of water use, conservation of this invaluable natural resource, and abatement of water pollution are subject to common law rules as well as local, state, and federal regulation. The common law developed intricate rules protecting private landowner rights to the use and quality of waters, the nature of the rights being dependent on the classification of the water as a navigable watercourse, subterranean and percolating waters, and surface waters. *See generally* P. Hetrick, Webster's Real Estate Law in North Carolina §§ 348-59 (1981). A proprietor of real property adjoining a stream has the right to the "reasonable use" of the water passing through the property. The doctrine of "reason-

able use" permits diminution in the quantity and quality of a watercourse that is consistent with the beneficial use of the land. *E.g., Durham v. Cotton Mills,* 141 N.C. 615, 54 S.E. 453 (1906). An upper riparian landowner's unreasonable use of water quantity or diminution of its quality permits a lower riparian owner to maintain a civil action in nuisance or trespass to land. *E.g., Springer v. Joseph Schlitz Brewing Company,* 510 F. 2d 468 (4th Cir. 1975); *Stowe v. Gastonia,* 231 N.C. 157, 56 S.E. 2d 413 (1949); *Clinard v. Kernersville,* 215 N.C. 745, 3 S.E. 2d 267 (1939); *Nance v. Fertilizer Co.,* 200 N.C. 702, 158 S.E. 486 (1931). Our supreme court has described the nature of the lower riparian owner's right as an incorporeal hereditament of the land, the right being:

> [A]s much [of a] property [right] as is the right to have the hills and forests remain in place, and while there is no property right in any particular particle of water or in all of them put together, a riparian proprietor has the right of their flow past his lands for ordinary domestic, manufacturing, and other lawful purposes, without injurious or prejudicial interference by an upper proprietor.

*Smith v. Morganton,* 187 N.C. 801, 123 S.E. 88 (1924).

The regulation of water use is also subject to a public interest that is protected by local, state and federal governments. *See generally* P. Hetrick, *supra;* 1A G. Thompson, Thompson on Real Property § 284 (1964). As the United States and North Carolina have expanded in population and industrialization, increased governmental regulation to abate water pollution has ensued. Legislative bodies have uniformly recognized that unabated pollution imminently threatens man's environment. The North Carolina General Assembly has enacted comprehensive and sophisticated legislation regulating water use, conservation, and pollution control. N.C. Gen. Stat. §§ 143-211 to -215.83 (1983); *see generally* W. Aycock, Introduction to Water Use Law in North Carolina, 46 N.C. L. Rev. 1 (1967). Congress has also systematically extended its regulation of water pollution and control, culminating in the FWPCA.

In the FWPCA, Congress established the national goal of eliminating the discharge of pollutants into the navigable waters of the United States by 1985. 33 U.S.C. § 1251(a)(1). A key feature of the FWPCA is the prohibition of pollutant discharges by any

person except in compliance with applicable regulatory permits. 33 U.S.C. § 1311(a). Congress authorized the Environmental Protection Agency (hereinafter EPA) to establish effluent limitations for pollutants and toxic waste discharges by industry, agricultural operations and public and private waste treatment facilities. All public and private organizations discharging wastes through point sources are required to obtain a NPDES permit based on those limitations prior to any actual discharge. 33 U.S.C. § 1342. Individual states are authorized to assume responsibility for administration of the NPDES permit system upon state statutory authorization and application to the EPA. 33 U.S.C. § 1342(b).

The North Carolina General Assembly amended the Clean Water Act, complying with the requirements of the FWPCA, in order to obtain state administration of the NPDES permit system. 1973 N.C. Sess. Laws, c. 1262, s. 23. The Environmental Management Commission (hereinafter EMC) was directed to develop classifications of waters in the state based on the tolerance of the waters to waste discharges. G.S. § 143-214.1. The Act also directs the EMC to adopt effluent standards and limitations and waste treatment management practices to abate and control water pollution and the discharge of toxic waste materials. G.S. § 143-215. The General Assembly specifically prohibited the discharge of waste materials by any person until a NPDES permit has been secured. The Act forbids any person to:

> (6) Cause or permit any waste, directly or indirectly, to be discharged to or in any manner intermixed with the waters of the State in violation of the water quality standards applicable to the assigned classifications or in violation of any effluent standards or limitations established for any point source, unless allowed as a condition of any permit, special order or other appropriate instrument issued or entered into by the Environmental Management Commission under the provisions of this Article.

G.S. § 143-215.1(a). The EMC and the Department of Natural Resources and Community Development (hereinafter NRCD), the administrative agencies responsible for issuing permits and monitoring compliance, are given broad investigatory powers. Violation of the Act can result in civil and criminal penalties. In addition, NRCD can request the Attorney General to institute

civil actions for injunctive relief for threatened or actual viola-
tions of effluent standards. G.S. § 143-215.6.

Defendant contends that the scope of the General Assembly's
enactments demonstrate its intent to abrogate nuisance and tres-
pass to land as civil actions for industrial pollution of riparian
waters. Defendant relies on the General Assembly's stated intent:

> [T]o confer such authority upon the Department of Natural
> Resources and Community Development as shall be neces-
> sary to administer a complete program of water and air con-
> servation, pollution abatement and control and to achieve a
> coordinated effort of pollution abatement and control with
> other jurisdictions. Standards of water and air purity shall be
> designed to protect human health, to prevent injury to plant
> and animal life, to prevent damage to public and private
> property, to insure the continued enjoyment of the natural
> attractions of the State, to encourage the expansion of
> employment opportunities, to provide a permanent founda-
> tion for healthy industrial development, and to secure for the
> people of North Carolina, now and in the future, the benefi-
> cial uses of these great natural resources. It is the intent of
> the General Assembly that the powers and duties of the En-
> vironmental Management Commission and the Department of
> Natural Resources and Community Development be con-
> strued so as to enable the Department and the Commission
> to qualify to administer federally mandated programs of
> environmental management and to qualify to accept and ad-
> minister funds from the federal government for such pro-
> grams.

G.S. § 143-211. Relying on *McMichael v. Proctor, supra,* and
*Christenbury v. Hedrick, supra,* defendant contends that the
General Assembly, by legislating in the field of pollution abate-
ment, has preempted private rights of action under common law
theories. Defendant also contends that by placing enforcement
powers in the EMC and the NRCD to seek injunctions against vio-
lations or threatened violations of the Act, the General Assembly
preempted the right of private action seeking this remedy. In
support of their position, defendant notes that the General As-
sembly specifically omitted from the Clean Water Act provisions

authorizing citizen suits for violations of state law which were enacted by Congress for violations of the FWPCA.

Defendant next contends that because the FWPCA displaced federal common law, the Clean Water Act, by analogy, abrogates North Carolina common law. Defendant notes that the United States Supreme Court has held that the FWPCA displaced the federal common law action of nuisance in pollution cases. *Milwaukee v. Illinois*, 451 U.S. 304 (1981). While defendant correctly cites the Supreme Court's holding, the *City of Milwaukee* court carefully noted that "[f]ederal courts, unlike state courts, are not general common-law courts and do not possess a general power to develop and apply their own rules of decision." *Id.* The Supreme Court held that when "Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears." *Id.* As previously noted, the presumption as to the abrogation of common law in this state by an enactment of the General Assembly is substantially different. We reject defendant's argument.

Defendant argues that the General Assembly demonstrated its intent to abrogate common law because it failed to incorporate a citizen suit provision in the Clean Water Act that Congress adopted in the FWPCA. We disagree. The FWPCA does contain a citizen suit provision which permits any person, on his own behalf, to seek judicial enforcement of effluent standards or limitations, or to seek an order requiring the EPA to perform statutory mandates. 33 U.S.C. § 1365(a). The citizen bringing suit under the FWPCA must give advance notice in most instances to the EPA, the state regulatory agency, and the alleged violator before initiating the action. 33 U.S.C. § 1365(b)(1)(A). Citizen suits are prohibited if the EPA or state agency is "diligently prosecuting a civil or criminal action . . . to require compliance" with effluent standards, but the citizen may intervene in the proceeding as a matter of right. 33 U.S.C. § 1365(b)(1)(B). The FWPCA specifically states that "[n]othing in this section shall restrict any right which any person . . . may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief. . . ." 33 U.S.C. § 1365(e). This provides a supplemental method of enforcement of the FWPCA to expedite administrative action to abate FWPCA

violations, *Com. of Mass. v. United States Veterans Admin.*, 541 F. 2d 119 (1st Cir. 1976), but it does not create a private right of action for monetary damages, and, therefore, any fines levied against a violator are payable to the government and not to the citizen plaintiff. *Sierra Club v. SCM Corp.*, 580 F. Supp. 862 (W.D.N.Y. 1984), *aff'd*, 747 F. 2d 99 (2nd Cir. 1984).

Under the statutory construction principles previously enunciated, the General Assembly was aware of the provisions of the FWPCA and clearly chose not to include a citizen suit provision in the state regulatory scheme. Inclusion of such a provision in the Clean Water Act was not necessary, however, as the FWPCA citizen suit provision adequately provides a citizen of this state with the authority to seek enforcement of the FWPCA. Most importantly, the right of a citizen to seek enforcement of effluent standards or limitations was designed to provide supplementary enforcement of the legislative enactment rather than providing a method of private redress for damages from pollution. The General Assembly's omission of the citizen suit provision only bears on citizen enforcement of the state regulatory scheme rather than demonstrating any legislative intent to preempt private rights of action at common law.

Defendant finally contends that the General Assembly demonstrated its intent to abolish a private right of action by a riparian owner by failing to specifically preserve the right of private suit. Defendant correctly notes that in those sections of the Clean Water Act which permit the EMC to control water usage by declaring an area of the state "a capacity use area," thereby prohibiting any person from withdrawing or discharging excessive amounts of groundwater or surface water in excess of statutory limitations, G.S. § 143-215.13, the General Assembly specifically provided that the statute did not change or modify existing common or statutory law with respect to the rights of riparian owners concerning the use of surface waters of this state. G.S. § 143-215.22. The sections of the Clean Water Act relating to effluent discharges do not contain a similar reservation of common law rights. Notwithstanding the General Assembly's omission of specific statutory language reserving common law rights, we conclude that by enacting legislation to seek state administration of the FWPCA the General Assembly did not in-

tend to act with respect to common law riparian rights for waste discharges in excess of an NPDES permit.

We conclude that the Clean Water Act does not abrogate the common law civil actions for private nuisance and trespass to land for pollution of waters resulting from violation of a NPDES permit. First, the Clean Water Act, as amended, does not specifically abrogate these common law civil actions. Assuming for the purposes of this appeal that industrial discharges made under a NPDES permit would constitute a "reasonable use" of water in accordance with the common law, thereby effectively preventing a civil action founded in nuisance or trespass to land, plaintiff's allegations in the case before us allege waste discharges in violation of defendant's NPDES permit.

Second, to adopt the holding of the trial court would lead to absurd results. By holding that the common law actions of common law nuisance and trespass to land were abrogated by the Clean Water Act, plaintiff would be left in the untenable position of having suffered damage to real property without an effective remedy under the Act. While the Clean Water Act provides for criminal and civil penalties, the Act does not provide a mechanism for compensation of private landowners for damage to their property or personal injury. Based on the trial court's order, plaintiff's only remedy would be to report any NPDES violation by defendant to NRCD without legal recourse for the alleged damages to his property. We cannot conceive that the General Assembly intended any such result in adopting the Clean Water Act. We agree with defendant that the General Assembly has provided a comprehensive statutory scheme for remedial correction of water pollution as well as other forms of industrial and private pollution. Preservation of the common law actions of nuisance and trespass to land for industrial discharges in violation of the laws of this state is consistent with the General Assembly's enactments rather than inconsistent with them as argued by defendant. By retaining the common law civil actions of nuisance and trespass to land, the legislative intent to maintain the waters of this state in a clean and wholesome state for present and future generations is strengthened.

The General Assembly, by its amendments to the Clean Water Act, established standards for waste discharges which, if

violated, create an additional basis for private civil actions. In *Springer v. Joseph Schlitz Brewing Company, supra*, Schlitz discharged waste materials into a city sewage treatment facility in violation of a municipal ordinance. The *Springer* court held that permitted discharges in compliance with the ordinance would afford defendant immunity from liability for the city's failure to properly treat and dispose of the waste which subsequently damaged a lower riparian land owner. That court held, however, that North Carolina:

> [I]s firmly committed to the proposition that the 'violation of a statute designed to protect persons or property is a negligent act, and if such negligence proximately causes injury, the violator is liable.' . . . The statute or ordinance, serving as a legislative declaration of a standard of care, creates a private right not to be harmed by its violation.

*Springer v. Joseph Schlitz Brewing Company, supra* (citations omitted). G.S. § 143-215.6(b)(1) provides that "[a]ny person who willfully or negligently violates any classification, standard or limitation established pursuant to . . . [G.S.] 143-215 . . . shall be guilty of a misdemeanor . . . ." The General Assembly explicitly expressed its intent to "protect human health, to prevent injury to plant and animal life, [and] to prevent damage to public and private property . . . ." G.S. § 143-211. We find the *Springer* court's rationale soundly reflects the law of this state, and we hold that willful or negligent discharges in violation of a NPDES permit afford a basis for an action in damages to a riparian owner.

[2] We also find that the trial court erred in dismissing plaintiff's action because plaintiff has stated a cause of action under G.S. § 143-215.93. The General Assembly has provided that:

> (a) Unlawful Discharges. — It shall be unlawful, except as otherwise provided in this Part, for any person to discharge, or cause to be discharged, oil or other hazardous substances into or upon any waters, . . . surface water drain or other waters that drain into the waters of this State, regardless of the fault of the person having control over the oil or other hazardous substances, or regardless of whether the discharge was the result of intentional or negligent conduct, accident or other cause.

(b) Excepted Discharges. — This section shall not apply to discharges of oil or other hazardous substances in the following circumstances:

(1) When the discharge was authorized by an existing regulation of the Environmental Management Commission.

(2) When any person subject to liability under this Article proves that a discharge was caused by any of the following:

a. An act of God.

b. An act of war or sabotage.

c. Negligence on the part of the United States government or the State of North Carolina or its political subdivisions.

d. An act or omission of a third party, whether any such act or omission was or was not negligent.

e. Any act or omission by or at the direction of a law-enforcement officer or fireman.

G.S. § 143-215.83. G.S. § 143-215.93 provides that discharge of oil or other hazardous substances imposes a strict liability on the actor for damages to property or persons, either public or private.

In his complaint, plaintiff alleged that:

7) Defendant has regularly and continually . . . violated the terms and conditions of said permit by discharging chemicals and waste into the stream which are not permitted by the [NPDES] permit.

8) Defendant has regularly and continually for a period of at least three years discharged cleansing oils, finishing oils, urea formaldehyde glue and other hazardous and toxic chemicals and industrial wastes into said stream and onto the lands of the plaintiff.

9) The continuing acts of the defendant . . . have caused the waters of said stream to become polluted and filled with filthy, oily substances and impregnated with foul, nauseating

odors and has polluted the land of the plaintiff abutting and adjoining the stream.

. . .

12) That the plaintiff will continue to suffer irreparable harm and injury unless and until the defendant is permanently restrained and enjoined from discharging hazardous, toxic chemicals and substances into said stream and unless and until the defendant is permanently restrained and enjoined from discharging all substances into said stream which are not allowed by its NPDES Permit.

Because the trial court dismissed plaintiff's claim under Rule 12(b)(6), the presumption is that all factual allegations in the complaint are true. *Smith v. Ford Motor Co., supra.* Plaintiff has clearly alleged that hazardous materials in violation of defendant's NPDES permit were discharged into the parties' common stream, and that the discharge damaged plaintiff's property. The complaint is liberally construed, and when the allegations give sufficient notice of a wrongful action, an incorrect choice of the legal theory upon which the claim is founded should not result in dismissal if the factual allegations are sufficient to state a claim under some recognized legal theory. *Jones v. City of Greensboro,* 51 N.C. App. 571, 277 S.E. 2d 562 (1981). We conclude that plaintiff has stated sufficient facts to state a claim for relief under G.S. § 143-215.93 even though the prayer for relief in the complaint does not identify the statute as a basis for the action. *See generally* W. Shuford, N.C. Civ. Prac. & Proc. (2nd ed. 1981) § 12-10.

Because of our holding that the North Carolina Clean Water Act does not abrogate the common law actions of nuisance and trespass to land for industrial discharges in violation of a NPDES permit, it is unnecessary to address plaintiff's constitutional arguments. For the reasons stated, the order of the trial court dismissing plaintiff's action must be and is hereby,

Reversed.

Judges JOHNSON and COZORT concur.