**Walter Eugene LEDERER, Jr., Plaintiff,**

v.

**HARGRAVES TECHNOLOGY CORPORATION, Defendant.**

**No. 5:02–CV–122–V.**

United States District Court, W.D. North Carolina, Charlotte Division.

April 11, 2003.

Brian R. Harwell, Brawley & Harwell, P.A., Mooresville, NC, for plaintiff.

Philip M. Van Hoy, G. Bryan Adams, III, Van Hoy, Reutlinger, Adams & Dunn, Charlotte, NC, for defendant.

## ORDER

RICHARD L. VOORHEES, District Judge.

THIS MATTER is before the Court upon Defendant's Motion to Dismiss as to Count II of the Complaint, which is a North Carolina state law cause of action for wrongful discharge. This matter is also before the Court upon the response of Plaintiff to the Court's Order to Show Cause, which was entered January 17, 2003. The extremely late filing of the Plaintiff's brief in response to the Defendant's Motion to Dismiss prompted the Court to enter its Order to Show Cause directing Plaintiff to demonstrate why the Court should not refuse to consider its untimely brief. The Court shall first address the procedural issue of whether it should consider the Plaintiff's brief, and then discuss the merits of Defendant's Motion to Dismiss.

## I. PLAINTIFF'S RESPONSE TO THE ORDER TO SHOW CAUSE

■ Defendant filed its Motion to Dismiss and Memorandum in Support on October 17, 2002. Pursuant to Local Rule 7.1(B), the response by Plaintiff was to be filed no later than November 3, 2002. However, Plaintiff neglected to file a response to the Motion until January 15, 2003, or one day after the Defendant called the Motion to the attention of the magistrate judge during the Initial Pretrial Conference. Federal Rule of Civil Procedure 6(b) provides that "[w]hen by these rules...an act is required...within a specific time the court for cause shown may at any time in its discretion...upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Thus, if a party desires to file a response to a memorandum after the time for filing has expired, a motion must be filed demonstrating the reason for the failure to timely file the memorandum. Further, the reason must also fall within the scope of "excusable neglect," an amor-

phous term requiring consideration of equitable factors such as "danger of prejudice...the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was in the control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Serv. Co. v. Brunswick Assoc.*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

■ Plaintiff should have filed a motion for enlargement along with his Response to the Defendant's Memorandum, but neglected to do so. Nonetheless, the Court concludes that its own Order to Show Cause was sufficient to satisfy the motion requirement of Rule 6(b)(2). However, after an evaluation of the Plaintiff's Response the Court's Order to Show Cause, the Court concludes that the Plaintiff's failure to timely file its Response to the Defendant's Memorandum was inexcusable. Essentially, Plaintiff's explanation for his delay is inadvertence. The delay and expense caused to both this Court and the Defendant in having to address the untimely Response have been substantial. Furthermore, the Plaintiff's untimely—and obviously rushed—Response to the Defendant's Memorandum fails to effectively set forth and develop the grounds for opposing the Defendant's Motion; it is only in his subsequent Response to this Court's Order to Show Cause that the Plaintiff sets out the true grounds for opposing the Motion to Dismiss. Plaintiff is not allowed two bites at the apple. All factors having been considered, the Court finds the delay to be inexcusable, and shall not consider Plaintiff's Response in evaluating the Defendant's Motion to Dismiss.

## II. THE MOTION TO DISMISS COUNT II OF THE COMPLAINT

A motion to dismiss should be granted only when it appears to a certainty that there is no set of facts upon which the plaintiff could prevail as to a particular claim. *See McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 328 (4th Cir.1996). Such is the case when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *Brooks v. City of Winston–Salem*, 85 F.3d 178, 181 (4th Cir. 1996). When reviewing a motion to dismiss, the court assumes the facts alleged in the complaint are true, and construes the allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *McNair*, 95 F.3d at 327.

Plaintiff's Complaint arises out of an at-will employment relationship with Defendant. Plaintiff, a member of the North Carolina National Guard, alleges that the State of North Carolina required him to perform active duty on three particular days. After informing Defendant of his active duty requirement, Plaintiff was told that he would not be allowed to be absent from work in order to perform such requirement. Plaintiff nonetheless reported to duty with the National Guard. Upon returning to work after duty, Plaintiff was terminated for reasons related to his service in the National Guard.

■ The Complaint alleges causes of action under the Uniformed Services Employment and Reemployment Rights Act (38 U.S.C. § 4323(b)(3)) and the North Carolina common law of wrongful discharge. The Defendant moves to dismiss the North Carolina state law claim for wrongful discharge on two alternative bases, either of which would be sufficient to sustain a motion to dismiss. First, Defendant argues that in enacting General Statutes section 127A–202.1, the North Carolina legislature intended to provide the exclusive legal remedy for National Guard

servicemen who have been discriminated against by their employers on the basis of their membership in the National Guard, thereby precluding a common law tort cause of action for wrongful discharge.[1] In a related argument, the Defendant argues that the Plaintiff failed to exhaust his administrative remedies, as N.C.G.S. § 127A–202.1 mandates. Second, and in the alternative, Defendant argues that Plaintiff fails to state a cause of action for wrongful discharge under the public policy exception recognized by North Carolina courts, as the Plaintiff has alleged no intent or willfulness. Because the Court concludes that the North Carolina legislature intended sections 127A–202.1 and 127A–203 to be the exclusive statutory remedies for discrimination by employers based on an employee's enlistment in the National Guard, the Plaintiff's Complaint must be dismissed as to Count II.

 Where the North Carolina legislature evinces its intent to create exclusive statutory remedies to redress a certain harm, it precludes common law actions with respect to that same harm. *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 416 S.E.2d 166, 171 (1992). However, "[t]he availability of alternative common law and statutory remedies...supplements rather than hinders the ultimate goal of protecting employees who have been fired in violation of public policy." *Id.* In making the determination whether the legislature intended to eliminate common law remedies, courts should first look to the language of the statute itself. *Id.* at 172. If the statute does not expressly preclude common law remedies, courts should then look to the "purpose and spirit of the statute and what the enactment sought to accomplish, considering both the history and circumstances surrounding the legislation and the reason for its enactment." *Biddix v. Henredon Furniture Ind.*, 76 N.C.App. 30, 331 S.E.2d 717, 720 (1985). When evaluating the "history and circumstances" on which a statute is based, court should consider many factors, including the purpose appearing from the statute as a whole, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the title, and "other like means." *State v. Green*, 348 N.C. 588, 502 S.E.2d 819, 824 (1998).

 Neither the parties' nor the Court's Research reveals any North Carolina court interpretations of any of the statutory sections at issue. Likewise, the parties have not indicated, and the Court's research has not revealed, any indication of written, contemporaneous legislative history underlying any of General Statutes sections 127A–202, 127A–202.1, or 127A–203.[2] Therefore, the Court makes its de-

---

1. Initially, the Court notes that Defendant has raised the issue of preclusion with respect only to N.C.G.S. § 127A–202.1. In other words, Defendant argues that the aforementioned statute is the only one which may affect the rights of Plaintiff with respect to Plaintiff's common law claims. However, the Court cannot help but note that section 127A–203, read in conjunction with section 127A–202, also appears to create a statutory cause of action for aggrieved employees. To that extent, the Court is compelled to consider sections 127A–202 and 203 in its analysis, even though the issue has not been not raised by Defendant.

2. Plaintiff does attempt to offer evidence of legislative intent by way of the affidavit of C. Robert Brawley, a former North Carolina representative who sponsored House Bill 432, which was enacted as N.C.G.S. § 127A–202.1. *See* Brawley Aff. However, the Court cannot accept this as evidence of legislative intent. To be valid, helpful, and credible, legislative history must commemorate a legislature's intent *prior to and at the time the law was enacted.* With all due respect to Mr. Brawley, a legislator's opinion as to the reasoning and intent underlying a particular statute has no relevance where the opinion is given *after* the particular statute is enacted. After enactment

termination of legislative intent based on statutory interpretation.

The Court must first look to the language of the statutes to determine whether the legislature precluded common law remedies for wrongful discharge of National Guard servicemen. None of the three statutes in question expressly abrogates North Carolina's common law regarding wrongful discharge for violation of public policy. Thus, the Court moves to an analysis of the various statutory interpretation factors enumerated in the *Biddix* and *Green* cases.

The Court finds three considerations compelling the conclusion that the North Carolina legislature intended to preclude common law actions for wrongful discharge in violation of public policy with respect to members of the National Guard. The Court shall address each consideration in turn.

## A. Analysis of statutory language and subject matter

First, sections 127A–202, 127A–202.1, and 127A–203 squarely address the remedies afforded to members of the National Guards where they have been discriminated against by their employers as a result of their status as servicemen. Section 127A–202 enumerates certain rights afforded to members of the National Guard who are called into service where such service conflicts with their ability to perform their jobs. That section provides that:

Upon release from State duty, the employee shall make written application to his previous employer for reemployment...If the employee is still qualified for his previous employment, he shall be restored to his previous position or to a position of like seniority, status and salary, unless the employer's circumstances now make the restoration unreasonable. If the employee is no longer qualified for his previous employment, he shall be placed in another position, for which he is qualified...unless the employer's circumstances now make the restoration unreasonable.

N.C.G.S. § 127A–202 (2001). Section 127A–203 further provides that:

If any employer, public or private, fails or refuses to comply with G.S. 127A–202, the superior court for the district of the employer's place of business may, upon the filing of a motion, petition, or other appropriate pleading, by the employee, require the employer to comply with G.S. 127A–202 and to compensate the employee for any loss of wages or benefits suffered by reason of the employer's unlawful failure or refusal.

N.C.G.S. § 127A–203 (2001). It is clear that section 127A–202 establishes certain statutory rights for National Guard servicemen with respect to their reemployment after performing their service duty. It is equally clear that section 127A–203 provides a legal means for enforcing the rights afforded by 127A–202. Such means entails filing a lawsuit or other appropriate papers with the superior court for the employer's district. Section 127A–203 also provides a specific remedy for the employee, should he prevail in his lawsuit. The employee is allowed to recover "any loss of wages or benefits" caused by his employer's denial of his statutorily-created reemployment rights. Furthermore, section 127A–202 provides to employers a defense against actions brought pursuant to section 127A–203: unreasonableness of reemploy-

of a law, the legislature's duty is completed; interpretation of legislative intent and action is a duty reserved for the courts. *Marbury v.* *Madison,* 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803).

ment. Read in context with one another, the two statutes create a system of rights and remedies afforded to a National Guard serviceman that has been discriminated against by his employer on account of his service responsibilities.

Section 127A–202.1 also creates certain rights and remedies for servicemen in the National Guard. Section 127A–202.1(a) provides the public policy statement of North Carolina that all those performing service with the National Guard shall be afforded right to perform such service without "fear of discriminatory action or retaliatory action from their employer or perspective employer." Section 127A–202.1(b) provides, essentially, that members of the National Guard shall not be discriminated against in employment relationship on the basis of their status as servicemen. Further, section 127A–202.1(c) establishes exactly the type of behavior which constitutes discrimination with respect to National Guard members. In order to have engaged in employment discrimination against a National Guard serviceman, an employer must have considered the employee's status as a serviceman as a "motivating factor" in the adverse employment action. It also, however, provides a defense and a burden of proof on that defense; if the employer can show "by the greater weight of the evidence" that the adverse action would have occurred absent the employee's status as a serviceman, then the employer shall have a defense to the action. Finally, and most importantly, section 127A–202.1(e) establishes the legal procedure for obtaining redress. Section 127A–202.1(e) provides that the "Commissioner of Labor shall enforce the provisions of this section according to Article 21 of Chapter 95 of the General Statutes, including the rules and regulations issued pursuant to that Article."

"Article 21 of Chapter 95 of the General Statutes" refers to the state statutory scheme known as the Retaliatory Employment Discrimination Act ("REDA"). REDA provides for a scheme of administrative enforcement of certain rights, and is similar to the administrative scheme utilized in Title VII employment discrimination cases. REDA requires that an employee file a written complaint with the Commissioner of Labor within 180 days of the alleged discrimination. N.C.G.S. § 95–242(a) (2001). The Commissioner is required to investigate the claim and determine whether discrimination occurred, such determination to be made within 90 days of the filing of the complaint. Id. The employee may request a right-to-sue letter 180 days after filing the complaint with the Commissioner of Labor. Id. § 95–242(c). Within 90 days of receiving a right-to-sue letter, the employee may commence a civil action against his employer in superior court. Id. §§ 95–243(a),(b). The employee may seek, specifically, an injunction, reinstatement of employment and benefits, and compensation for lost wages and other economic losses. Id. § 95–243(c). In addition, the employee may also be entitled to costs and fees, as well as treble damages, if he prevails. Id.

Thus, in General Statute section 127A–202.1, the North Carolina legislature provided a scheme of rights and remedies for employees that feel they have been discriminated against by their employers on account of their status as a serviceman. The legislature also provided specific procedures that must be followed in order to enforce those rights and be availed of those remedies. Taken in combination, the rights and remedies available under sections 127A–202, 202.1, and 203 encompass the same rights and remedies available under the common law tort of wrongful discharge in violation of public policy. In fact, the rights and remedies afforded

by the North Carolina legislature in the statutes are even more expansive than the rights afforded at common law.[3] In determining whether the North Carolina legislature precluded a common law cause of action for wrongful discharge in violation of public policy by enacting sections 127A–202–203, this Court cannot ignore the fact that the ultimate purpose of the statutes and the common law cause of action is exactly the same: remedying discrimination against National Guard servicemen. Furthermore, the statutes in question are both complex and comprehensive, setting out rights, mandating specific procedures for vindicating those rights, and declaring the availability of certain relief should an employee prevail on the statutorily-created cause of action.

The Court thus finds that an interpretive analysis of N.C.G.S. §§ 127A–202, 202.1, and 203 necessitates the conclusion that the statutes were intended by the North Carolina legislature to be the exclusive remedies for National Guard servicemen alleging employment discrimination arising from their servicemen's status.

## B. State of the common law at times of enactment

■ Pursuant to the *Amos* case, an important factor for courts to consider when determining the intent of the legislature to preclude common law remedies is the state of the common law at the time

the relevant statute was enacted. *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 416 S.E.2d 166, 172 (1992). Thus, the Court finds it relevant in the instant case to determine the chronology for enactment of the relevant statutes when compared to the development of the common law of wrongful discharge. While sections 127A–202 and 203 each were enacted by the North Carolina legislature in 1979, 127A–202.1 was enacted in 1997. The North Carolina Supreme Court recognized the public policy exception to the employment at will doctrine in 1985. *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 381 S.E.2d 445, 447 (1989).

The public policy exception created by *Coman* did not exist at the time sections 127A–202 and 203 were enacted. However, the public policy exception had long been recognized by the time section 127A–202.1 was enacted in 1997. As stated by the Court in *Biddix*, "When the General Assembly legislates with respect to the subject matter of a common law rule, the legislation supplants the common law...however, statutes in abrogation of the common law are strictly construed." *Biddix v. Henredon Furniture Ind.*, 76 N.C.App. 30, 331 S.E.2d 717, 720 (1985). As articulated in section II.A *supra*, the rights and remedies of the common law of wrongful discharge and section 127A–202.1 are essentially the same, and the societal evil of discrimination is addressed by both

---

3. For example, an employee bringing a wrongful discharge claim would not have the availability of attorneys fees, as he would under section 127A–202.1. Additionally, the burden of proof under either of the statutory schemes is far lighter than under a common law claim of wrongful discharge, which not only requires proof of intent or willfulness, but also requires proof of some compelling public policy. *Garner v. Rentenbach Constr. Inc.*, 350 N.C. 567, 515 S.E.2d 438, 441 (1999) (stating, [u]nder the rationale of *Sides[ v. Duke University*, 74 N.C.App. 331,

328 S.E.2d 818 (1985)], *Coman*, and *Amos*, something more than a mere statutory violation is required to sustain a claim of wrongful discharge under the public-policy exception. An employer wrongfully discharges an at-will employee if the termination is done for "an *unlawful reason* or *purpose* that contravenes public policy.") (emphasis in original). On the other hand, the burden of proof under section 127A–202.1 requires an employee to show that his employer used his serviceman's status only as a "motivating factor" in the adverse employment decision.

the common law cause of action and the statutory cause of action. Furthermore, the legislature is presumed to have knowledge of the state of the common law with regard to the subject matter its legislation addresses. *Id.* Thus, this Court may presume that at the time the North Carolina legislature enacted the statute, it was aware of both the *Coman* case and the potential existence of a wrongful discharge cause of action with respect to discriminatory practices against National Guard servicemen. The Court finds that this consideration weighs strongly in favor of finding that the North Carolina legislature intended to preclude a common law cause of action in enacting N.C.G.S. § 127A–202.1.

*C. Other considerations*

Two other somewhat common-sense considerations weigh in favor of finding that the legislature intended to preclude a common law cause of action for wrongful discharge with respect to National Guard members.

The legislature created a scheme whereby a plaintiff would have two choices for vindicating the rights afforded under the statutes: 1) exhaust the administrative remedies afforded under REDA, obtain a right-to-sue letter, sue in North Carolina superior court, and be entitled to some enhanced remedies, including attorney's fees (N.C.G.S. § 127A–202.1), or 2) forego the administrative and procedural requirements and time schedules required by section 127A–202.1 and simply sue in superior court to receive compensation for loss of wages and benefits suffered as a result of the adverse employment decision (sections 127A–202 and 127A–203). Thus, the plaintiff may choose to follow more stringent procedural requirements and be entitled to greater remedies, an easier, more determinable burden of proof, and treble damages, or he may sue for reinstatement and compensation in superior court at the outset, without engaging in the four-month administrative process. It is nonsensical to think that the legislature would have granted plaintiffs two well-defined and distinct statutory causes of action and nonetheless have allowed them to forego both in favor of a common law cause of action. Why would the legislature enact one portion of the statute in 1979, then return to the statute nearly two decades later in 1997 to enact an amendment, if it didn't expect employees to use either? Further, why would a legislature create two causes of action with specific burdens of proof, defenses, and remedies, and yet allow a plaintiff to completely ignore them?

Second, presumably the North Carolina legislature was cognizant of the similarities between a Title VII cause of action and the cause of action it created in section 127A–202.1. Complying with the administrative and procedural requirements of Title VII is, of course, mandatory in order for a plaintiff to have access to the statutory cause of action created therein. There is no reason for the Court to think that the legislature did not intend section 127A–202.1 to operate in exactly the same manner as Title VII.[4]

To conclude, the statutory construction, the legislature's knowledge of the existence of the common law cause of action, and practical considerations mandate the Court's conclusion that the North Carolina

---

4. The Court does not, and need not, pass on the question of whether Plaintiff has failed to exhaust his administrative remedies, as such a conclusion is not necessary to resolve this case. The Court merely concludes that the North Carolina legislature knowingly and intentionally precluded the common law wrongful discharge cause of action. As all the issues presented by Defendant in its Motion to Dismiss present novel issues of North Carolina law, the Court passes only on this limited issue as necessary to resolve the Motion.

legislature intended to preclude the wrongful discharge in violation of public policy cause of action.

### III. ORDER

The foregoing considered, IT IS THEREFORE ORDERED that the Defendant's Motion to Dismiss Count II of the Complaint is hereby GRANTED. Count II of the Complaint is **dismissed with prejudice**.