SARAH T. THOMPSON v. NORTHWESTERN SECURITY LIFE INSURANCE COMPANY

No. 7923SC240

(Filed 5 February 1980)

1. Insurance § 17— life insurance—forfeiture for nonpayment of premium— waiver or estoppel

In this action to recover under a policy of life insurance, the materials before the trial court on motion for summary judgment raised a material issue of fact as to whether defendant insurer waived or was estopped from asserting forfeiture of the policy for nonpayment of premiums where they tended to show that the parties disagreed as to whether insured paid a premium due on 6 April 1975 within the grace period; insured paid premiums of $102.20 for two months by check dated 24 June, and this check was deposited by defendant insurer in its premium account; defendant's check returning this $102.20 was given to insured on 17 July along with an application for continuation of coverage showing a schedule of premiums owing from 6 April through 6 August totalling $255.50; the application stated that defendant agreed to continuation of coverage subject to receipt by defendant of the premium requested during the lifetime and good health of the insured; on 17 July insured sent the completed application for continuation of coverage to defendant, including a signed statement that he was in good health, with checks for $255.50;

Thompson v. Insurance Co.

defendant's agent informed insured on 19 July that his policy had lapsed and that he was required to submit to a medical examination to reinstate the policy; defendant retained the $255.50 in premiums paid by insured; insured was involved in an accident on 20 July which resulted in his death on 8 August; and defendant wrote to the insured on 5 August, returning his checks and notifying him that his application for reinstatement of coverage was denied, but this letter was not delivered to insured during his lifetime.

2. **Insurance § 22— life insurance—reinstatement after lapse—invalidity of requirement for acceptance of premiums**

Where a life insurance policy which lapsed for nonpayment of premiums gave the insured the unfettered right to reinstatement of the policy upon payment of the overdue premiums and furnishing of evidence of insurability satisfactory to the company, a provision in defendant insurer's application for reinstatement which attempted to condition reinstatement on defendant's acceptance of insured's premiums substantially altered the terms of the policy and was void for lack of consideration.

3. **Insurance § 22— life insurance—reinstatement after lapse—evidence of insurability—signed statement by insured**

An insured's application for reinstatement of a lapsed life insurance policy which contained his signed assurance that he was in good health and had not suffered any injuries or illnesses since the issuance of the policy constituted evidence of insurability which must be deemed satisfactory to defendant insurer as a matter of law were defendant's request that insured undergo a medical examination was not communicated to insured until two days before the accident which caused his death, and insured did not have a reasonable opportunity to have this examination performed.

4. **Judgments § 36— judgment as estoppel—no identity of parties**

Plaintiff's action to recover in her individual capacity as beneficiary of a life insurance policy was not barred by her prior action on the policy brought as executrix of the deceased insured's estate and dismissed for failure to prosecute, since there was no identity of parties in the two actions.

APPEAL by plaintiff from *Rousseau, Judge.* Judgment entered 13 October 1978 in Superior Court, WILKES County. Heard in the Court of Appeals 26 October 1979.

Plaintiff is the beneficiary under a ten-year level term life insurance policy issued by the defendant on the life of the insured, William C. Thompson. The policy was issued on 6 October 1969 and had a face value of $50,000, requiring monthly premium payments of $51.10. There is no dispute that the insured had paid all premiums due as of 6 March 1975. The parties disagree as to whether the insured paid the premium due on 6 April 1975 within the thirty-one day period of grace provided by the policy. By check dated 24 June 1975, the insured paid $102.20 for two

months premiums, which defendant deposited in its premium account.

On 11 July 1975 defendant forwarded its check for $102.20 payable to the Northwestern Bank (Northwestern) with the notation that it was for the benefit of the insured. The check was sent to Jack Buchanan, an employee of Northwestern, who was also an agent of the defendant who sold the insured the policy and with whom the insured often dealt. Until 13 February 1975, the insured had made all premium payments payable to Northwestern. Accompanying the check was an application for continuation of coverage which showed a schedule of premiums owing from 6 April 1975 through 6 August 1975 totalling $255.50. The check and application were received by Buchanan on 12 July 1975. Buchanan gave the application to the insured on 17 July 1975, at which time insured completed the application and gave it to Buchanan with his check made payable to defendant for the balance of $153.30. The application stated that the defendant agreed to continuation of coverage under the policy subject to receipt and acceptance of the premiums requested. The application contained the following question: "A. Has any person previously insured under this policy been ill, suffered an accident, or consulted a physician since the date the policy was issued? B. If yes, please furnish the following information. . . ." The insured answered the question in the negative. The application contained no request or requirement that the insured submit to a medical examination.

Buchanan forwarded the two checks, totalling $255.50, as well as the application and transmittal letter to defendant on 17 July 1975. The next day, following receipt of these documents, defendant wrote Buchanan stating that the policy had lapsed, that the insured had no coverage at that time, and that to reinstate the policy, the insured was required to submit to a medical examination. The defendant retained the insured's premium payments. Buchanan telephoned the insured, who obtained the medical examination form from him on Saturday, 19 July 1975. The insured told Buchanan that he would have the examination by the following Monday. The following day, 20 July 1975, the insured was involved in an automobile accident in which he suffered a broken leg and internal injuries requiring hospitalization.

On 21 July 1975, Buchanan was contacted by insured's wife who informed him of the accident and that insured was in the hospital. Defendant refused to permit the insured to have the examination until the cast on his leg was removed. Defendant wrote to the insured on 5 August 1975, returning his checks and notifying the insured that his policy had lapsed and that it had denied his application for reinstatement of coverage. This letter was the first and only communication from the defendant directly to the insured regarding the status of his coverage. On 8 August 1975, the insured, while still in the hospital, died from complications of the injuries he received in the accident. Defendant's letter of 5 August 1975 was not delivered to the insured during his lifetime.

On 2 July 1976, the plaintiff in the present action, as administratrix of the estate of the insured, issued a civil summons against the defendant in Rutherford County and obtained an extension of time to file her complaint. The action was dismissed on 10 January 1977, no summons having been served and no complaint having been filed.

The present action was commenced on 27 February 1978, by the plaintiff in her individual capacity, by the filing of a complaint in Mecklenburg County. In the complaint plaintiff alleged the insured was covered by a life insurance policy issued by defendant, that defendant failed to pay the plaintiff, as beneficiary, the amount due under the policy, and that prior to his death, the insured had complied with all of the provisions of the policy including the payment of all premiums due thereunder.

The defendant denied that the insured was covered under the policy at the time of his death, further defending on grounds that the dismissal of plaintiff's previous action barred prosecution of the present suit. Defendant moved for a change of venue to Wilkes County. The action was ordered removed to Wilkes County on 21 August 1978. Defendant moved for summary judgment under G.S. 1A-1, Rule 56 and to dismiss under Rule 12(b), and plaintiff moved to amend her complaint pursuant to Rule 15(a). From the trial court's actions granting defendant's motion for summary judgment and denying plaintiff's motion to amend, plaintiff appeals. Defendant cross-appeals from the court's denial of its motion to dismiss under Rule 12(b) based on principles of *res judicata*.

---

---

*William D. McNaull, Jr., and Charles V. Bell for the plaintiff appellant.*

*E. James Moore and Katherine D. Woodruff for the defendant appellee.*

WELLS, Judge.

Plaintiff assigns as error the trial court's action granting defendant's motion for summary judgment. Summary judgment is proper only if the verified pleadings, depositions and affidavits properly before the court show that no genuine issue as to any material fact exists and that defendant is entitled to judgment as a matter of law. G.S. 1A-1, Rule 56(c).

> The court is not authorized by Rule 56 to decide an issue of fact. It is authorized to determine whether a genuine issue of fact exists. The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed.

*Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E. 2d 419, 422 (1979).

Plaintiff, in both her affidavit and deposition, stated that the insured had paid all the premiums when due under the policy and that the policy was not in arrears. This testimony is sufficient to raise a material issue of fact as to whether coverage had lapsed for nonpayment of the premiums due.

[1] Even had the policy lapsed, the affidavits and depositions before the trial court raise a material issue of fact as to whether the defendant has waived or is estopped from asserting forfeiture of the policy for nonpayment of premiums.

> Waiver sometimes has the characteristics of estoppel and sometimes of contract, but it is always based upon an express or implied agreement. There must always be an intention to relinquish a right, advantage, or benefit. The intention to waive may be expressed or implied from acts or conduct that naturally lead the other party to believe that the right has been intentionally given up. . . .

Thompson v. Insurance Co.

***" 'A course of action on the part of the insurance company which leads the party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract.' [Citations omitted.]" *Paul v. Ins. Co.*, 183 N.C. 159, 162, 110 S.E. 847, 849 (1922).

*Klein v. Insurance Co.*, 289 N.C. 63, 68, 220 S.E. 2d 595, 598-599 (1975). A waiver occurs where the company expressly or impliedly leads the insured to believe it has given up a right under its policy; while estoppel results when the company leads the insured to believe that conformance to a course of action by the insured will prevent forfeiture of the policy. *Id.* It is well established in this State that an insurance company may waive its right to assert forfeiture of an insurance policy for the nonpayment of premiums. *Murphy v. Insurance Co.*, 167 N.C. 334, 83 S.E. 461 (1914).

On the issues of waiver and estoppel, the conduct and acts of defendant and its agent, Buchanan, are critical. There is evidence that the insured usually dealt with defendant through agent Buchanan and Northwestern. There is no evidence that either defendant, Buchanan or Northwestern had ever informed the insured, prior to 19 July 1975, that his policy had lapsed or that he was not covered. The insured always promptly paid defendant what it requested. That defendant never intended to rely upon its right to forfeiture until after the insured's fatal accident seems manifest from its long-term retention of five months premium payments tendered by the insured on 17 July 1975.

The "Application for Continuation of Coverage" which defendant had the insured complete could also have been misleading to the insured. The application shows the following handwritten entry, apparently subscribed by the same employee of defendant who requested the application and premium payment, S. Souther:

Lapsed 4-6-75, Due 9-6-75
Money OK for 5 Mos.

The closing sentence in the application stated: "The Company agrees to the continuation of my covereage subject to receipt and

acceptance by the Company of the premium requested above during the lifetime and good health of all persons previously insured under this policy." From this language, which nowhere mentions that the policy was not in effect from the moment the overdue premiums were tendered or that the insured might have to submit any further proof of insurability to reinstate the policy, the insured certainly could reasonably have believed his coverage remained intact. Of course, ambiguous language affecting an insurance policy is liberally construed in favor of the insured. *Grant v. Insurance Co.*, 295 N.C. 39, 243 S.E. 2d 894 (1978).

From the evidence available to the plaintiff at trial, a jury may well find that defendant waived forfeiture of the policy or is estopped to assert forfeiture as a defense.

[2] Whether or not defendant has waived or is estopped to assert its right to declare a forfeiture of the policy for the nonpayment of premiums, there is no question here that the insured had an absolute contractual right to reinstatement of coverage. The reinstatement clause of the policy provided:

　　3. REINSTATEMENT.

　　　　If this policy shall lapse in consequence of default in payment of any premium it may be reinstated within five years after such default, but not later than the Expiry Date; upon receipt by the Company of (a) evidence of insurability satisfactory to the Company, and (b) payment of all overdue premiums with interest at 5% per annum from their respective due dates.

The policy thus allowed the insured the unfettered right to reinstatement upon the payment of overdue premiums and receipt of evidence of insurability satisfactory to the company. It must be noted that the defendant's application for reinstatement attempted to condition reinstatement on defendant's *acceptance* of the insured's premiums. Such a condition would substantially alter the terms of the policy, which require payment only, and is void for lack of consideration. There is no dispute here that the insured tendered the premiums requested by defendant for reinstatement, and accordingly, that policy condition was satisfied by the insured.

[3] We now reach the question whether the insured fulfilled the other policy condition for reinstatement—providing "evidence of insurability satisfactory to the Company." There is no dispute here that the insured was in good health at the time he made application for reinstatement. The previously mentioned health question addressed to the insured in the application form was the only evidence of insurability requested of the insured at the time of the application. Defendant does not contend that the insured fraudulently misrepresented his health on the application. Although defendant later requested a medical examination, this message was not communicated to him until Friday, 18 July 1975, and his accident, two days later, did not afford him a reasonable opportunity to have this examination performed. On these facts we hold that the insured's application for reinstatement, which contained his signed assurance that he was in good health at that time, constituted evidence of insurability which must be deemed satisfactory to the defendant as a matter of law. While we have found no decision of our courts directly on point, there is considerable authority in other jurisdictions for our holding.

*Bruegger v. Insurance Co.*, 387 F. Supp. 1177 (D.C. Wyo. 1975), *mod. on other grounds*, 529 F. 2d 869 (10th Cir. 1976), a diversity action, involved interpretation of an insurance policy under Wyoming law. In that case, the policy had lapsed, and the insured had completed an application for reinstatement and paid the overdue premiums. The next day, the insured was shot by an assailant, and he died from his wounds eleven days later. The defendant insurance company, unaware of the insured's injury and death, mailed notice of reinstatement to the insured two days after his death. When the beneficiary requested payment, defendant declined, contending that approval of reinstatement was not final until notice was mailed to the decedent, which was ineffective in this case because it antedated the insured's death.

The reinstatement provision of the policy in *Bruegger* was virtually identical to that of the policy we are presently considering. As in the case *sub judice*, in *Bruegger*, defendant's form application for reinstatement, signed by the insured, contained an assurance that the named insured was in good health and had not suffered any injuries or illnesses since the issuance of the policy. As in the present action, the defendant insurance company in *Bruegger* argued that it was entitled to additional evidence of in-

surability and could deny reinstatement until such evidence was provided. The District Court granted summary judgment for the plaintiff, reasoning, 387 F. Supp. at 1182-1183:

> When the insured mailed his application for reinstatement, together with payment of all premium arrears, there is no doubt that he was in good health. . . . His application for reinstatement provided "evidence of insurability satisfactory to the company" pursuant to the policy. . . . Of course, if at the time the application was mailed the insurer would have been justified in rejecting the application, as a reasonable insurer, it could have done so even though the death of the insured intervened, [citation omitted]. The agreement did not contemplate the exercise of the insurer's caprice or fancy. That which the law will say a contracting party ought in reason to be satisfied with, the law will say he is satisfied with. [Citations omitted.] The deceased was objectively insurable on [the date he mailed the insurer his application for reinstatement.]

> \*   \*   \*

> This is not to say that the insurer could not investigate to determine if the actual facts were other than as stated in the application or if there were elements of fraud present. [Citation omitted.] This was not the case here. If at the time of mailing of the application to reinstate there then existed no valid objection to the form or substance of the application, and there did not, the insurer could do but what it was bound to do—grant reinstatement. The accidental death of the insured due to a shooting in no way affected the insurer's right to approve or reject such application after the insured had fully complied with the conditions of his contract. [Citations omitted.]

*See also, Bowie v. Life Co.*, 105 F. 2d 806 (10th Cir. 1939); *Insurance Co. v. Trust Co.*, 56 Ind. App. 418, 105 N.E. 505 (1914); 3A Appleman, Insurance Law and Practice § 2016, pp. 495-496 (1967); Annotation, 164 A.L.R. 1057 (1946); Annotation, 105 A.L.R. 478 (1936).

While we acknowledge that there is a division among jurisdictions on the question of what constitutes satisfactory

evidence of insurability, we believe the *Bruegger* standard to be the better rule. Our Supreme Court has held that an insurer may not act arbitrarily upon an application for reinstatement of coverage. *Trust Co. v. Insurance Co.*, 201 N.C. 552, 160 S.E. 831 (1931). In the case before us, the only evidence of insurability which defendant requested of the insured at the time he made application for reinstatement consisted of questions concerning the health of the insured which it presented in the application form. There was no request at the time for a medical exam. Although defendant subsequently demanded such an examination, the insured was not afforded a reasonable opportunity to have the exam prior to his fatal accident. Subsequent to his accident, defendant itself acted to delay the exam. On the date the insured submitted his application and overdue premiums to defendant, there existed no valid objection to the form or substance of the application, and the insured's signed statement of his good health is the only evidence of insurability in this record. Defendant has in no way rebutted that evidence. Since the insured was objectively insurable on the date of the application, we hold defendant was bound to grant reinstatement on this date.

As to plaintiff's other assignment of error, we see no prejudice to plaintiff preventing her from prosecuting the present action by the trial court's denial of her motion under Rule 15(a) to amend her complaint.

[4] Defendant cross-assigns as error the trial court's denial of its motion under G.S. 1A-1, Rule 12(b) to dismiss plaintiff's claim on grounds that the dismissal of plaintiff's Rutherford County action, for failure to prosecute under Rule 41(b), bars the present suit. In general, a judgment on the merits bars parties or their privies from relitigating issues in a subsequent action which were, of necessity, already decided. *Brondum v. Cox*, 292 N.C. 192, 232 S.E. 2d 687 (1977). This prior Rutherford County action was commenced by plaintiff solely in her official capacity as executrix of the insured's estate. Since plaintiff's entitlement to the proceeds of the insurance policy issued by defendant is based solely on her status in her *individual* capacity as the wife and beneficiary of the insured under the policy, plaintiff could have recovered nothing under the policy in the prior action. *Andrews v. Masons*, 189 N.C. 697, 128 S.E. 4 (1925). Accordingly, there is insufficient identity of

parties in the two actions to bar the plaintiff from bringing her present claim.

We reverse the granting of defendant's motion for summary judgment and remand the case for proceedings not inconsistent with this opinion.

Reversed.

Judges ARNOLD and WEBB concur.