RONALD T. WILSON AND MARILYN WILSON, INDIVIDUALLY, AND RONALD T. WILSON AS GUARDIAN AD LITEM FOR WARREN CRAIG WILSON, CHRISTOPHER THOMAS WILSON, AND MATTHEW REID WILSON, MINOR CHILDREN, AND WENDELL SCOTT WILSON; GUY HILL AND MARIE HILL, INDIVIDUALLY, AND GUY HILL AS GUARDIAN AD LITEM FOR EMILY GWEN HILL, MINOR CHILD, AND CRAIG FREDERICK HILL, AND C. N. WHITE, PLAINTIFFS, AND WALTER PAGURA, SHEILA PAGURA, AND BEVERLEY C. PAGURA, INDIVIDUALLY, AND SHEILA PAGURA AS GUARDIAN AD LITEM FOR BENTLY PAGURA, MINOR CHILD, INTERVENOR-PLAINTIFFS v. McLEOD OIL COMPANY, INC., A NORTH CAROLINA CORPORATION, LOREN A. TOMPKINS, ADRIAN SIMMONS, GEORGE RIGGAN, AMOCO OIL COMPANY, A MARYLAND CORPORATION, DEFENDANTS v. ALAMANCE OIL COMPANY, INC., A NORTH CAROLINA CORPORATION, AND HILDA M. BAXTER, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE FOR CLIFTON E. BAXTER, DECEASED; WILLIAM THOMAS WARREN, CLYDE H. WARREN, ROBERT C. WARREN, JAMES PAUL WARREN, ODIS H. WARREN, OTIS A. WARREN AND WIFE, GLENDA FAYE WARREN, THIRD-PARTY DEFENDANTS

No. 8815SC684

(Filed 19 September 1989)

1. **Limitation of Actions § 5; Waters and Watercourses § 3.2 — gasoline contamination of well water — applicable statute of limitations**

The three-year statute of limitations of N.C.G.S. § 1-52 applies to an action to recover damages for gasoline contamination of plaintiffs' well water allegedly caused by leakage from defendants' underground storage tanks. N.C.G.S. § 1-52(2), (3) and (5).

WILSON v. McLEOD OIL CO.

[95 N.C. App. 479 (1989)]

2. **Limitation of Actions § 5; Waters and Watercourses § 3.2 — gasoline contamination of well water — statute of limitations**

Claims by two families for contamination of their well water from leaking underground storage tanks accrued when they were informed in June 1984 that their wells were contaminated, and their actions instituted in July 1986 were not time-barred. The claims of a third family were not time-barred where they moved to intervene in the action against defendants within three years after they were informed by NRCD that their well water was contaminated.

3. **Trespass § 3; Waters and Watercourses § 3.2 — gasoline contamination of well water — statute of limitations**

The presence of gasoline in plaintiffs' well water from leaking storage tanks was a continuing trespass, and one plaintiff's claim was barred by the statute of limitations where plaintiff learned in 1979 that a test showed the presence of gasoline in her well water, but she did not institute her action until 1986.

4. **Nuisance § 4; Trespass § 9; Waters and Watercourses § 3.2 — gasoline contamination of well water — strict liability — nuisance — trespass — negligence — sufficient forecast of evidence**

Plaintiffs' forecast of evidence in an action to recover damages for contamination of their well water by gasoline leakage from underground storage tanks owned or serviced by defendants was sufficient to present genuine issues of material fact as to defendants' liability based on strict liability under N.C.G.S. § 143-215.93, nuisance, trespass and negligence.

5. **Rules of Civil Procedure § 15.1 — motion to amend complaint — denial not abuse of discretion**

The trial court did not abuse its discretion in denying plaintiffs' motion filed 22 March 1988 to amend their complaint to institute direct claims against third-party defendants for gasoline contamination of their well water where plaintiffs contended that they did not become fully aware until January 1988 that an NRCD study showed involvement in the contamination by third-party defendants, but the NRCD report was dated 9 July 1987.

WILSON v. McLEOD OIL CO.

[95 N.C. App. 479 (1989)]

6. **Limitation of Actions § 5; Waters and Watercourses § 3.2 — gasoline contamination of well water — last acts more than ten years before action — statute of limitations**

Claims against the third-party defendants based on gasoline contamination of plaintiffs' well water were barred by the statute of limitations where the last acts of the third-party defendants giving rise to the claims occurred more than ten years from the time the action was ultimately brought. N.C.G.S. § 1-52(16).

Judge WELLS dissenting in part and concurring in part.

APPEAL by plaintiffs and intervenor plaintiffs (hereinafter plaintiffs) and defendants McLeod Oil Company, Inc., Loren Tompkins its president, Adrian Simmons and Estate of George Riggan from *Allen, J. B., Jr., Judge*. All orders entered in Superior Court, ALAMANCE County. Heard in the Court of Appeals 25 January 1989.

Orders entered 11 April 1988 denying plaintiffs' motion for partial summary judgment, and 12 April 1988 denying their motion to amend their complaint. Orders also entered 8 April 1988 granting summary judgment in favor of defendant Adrian Simmons and third-party defendant Alamance Oil Company. Orders entered 11 April 1988 granting summary judgment for defendant Loren A. Tompkins, 12 April 1988 for the Warren third-party defendants, and 14 April 1988 for the estate of George Riggan. Order entered 12 April 1988 granting summary judgment for Hilda Baxter individually and as personal representative for Clifton E. Baxter.

Claims against defendant Amoco Oil Co. were voluntarily dismissed by plaintiffs. Plaintiffs also dismissed claims against McLeod Oil Co., when they discovered that Midway Oil Company, a sister corporation, and not McLeod owned the underground storage tanks at the Mini Mart and had supplied gasoline to them. They then instituted a separate action against Midway Oil Co.

The original plaintiffs, the Wilson, Hill, and White families, instituted this action to recover damages suffered as a result of having their well water contaminated by gasoline. They commenced this action against several defendants who either presently supply or who have supplied in the past gasoline to two convenience stores and gasoline stations located near their homes, as well as against present and former owners of the two stores. They filed their complaint in July 1986, after tests conducted on the water by the

North Carolina Department of Natural Resources and Community Development (NRCD) in 1984 revealed the contamination. A fourth family, the Paguras, discovered contamination of their well in 1985. They filed a motion to intervene in this lawsuit in December 1987 which was granted on 22 February 1988.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Bryan E. Lessley, for plaintiff and intervenor plaintiff-appellants.*

*Hatch, Little & Bunn, by David H. Permar and Josephine L. Holland, for defendant-appellants and appellees McLeod Oil Company, Inc. and Loren A. Tompkins.*

*Patrice Solberg for defendant-appellant and appellee Estate of George Riggan.*

*Mark E. Fogel for defendant-appellant and appellee Adrian Simmons.*

*Carruthers & Roth, P.A., by Kenneth R. Keller and Grady L. Shields, for third-party defendant-appellees Otis A. Warren and Glenda Faye Warren.*

*Frederick J. Sternberg for third-party defendant-appellee Hilda M. Baxter, individually and as personal representative for Clifton E. Baxter.*

*Henson Henson Bayliss & Coates, by Jack B. Bayliss, Jr., for third-party defendant-appellee Alamance Oil Co.*

JOHNSON, Judge.

I

*Factual Background*

Plaintiffs, Wilson, Hill, White and intervenor-plaintiffs Pagura, are four families who reside in the Hopedale community in Alamance County. Their homes are located at or near the intersection of Sandy Cross and Hopedale-Haw River Roads. One corner of this intersection is a building which once housed a convenience store and gas station (hereinafter Mini Mart). The gasoline which was sold from this location was stored in underground storage tanks.

By their complaint, plaintiffs allege that they all share an aquifer with the Mini Mart property and that it is their sole source of fresh water for household use. They tap the aquifer with their

WILSON v. McLEOD OIL CO.

[95 N.C. App. 479 (1989)]

ordinary wells and pumps. Plaintiffs further allege that in 1978 a large quantity of gasoline seeped from one or more of the underground storage tanks into the ground. As a result, the gasoline flowed into the groundwater aquifer from which they obtained their water supply, and spread from the contamination site into the groundwater underneath their properties. They also allege that the migration continues, and that they have been exposed to the gasoline by (1) getting contaminated water, (2) inhaling gasoline vapor buildup in their homes, and (3) bathing with contaminated water. Plaintiffs based their claims upon theories of strict liability pursuant to G.S. sec. 143-215.93, negligence, nuisance, and trespass.

The evidence indicates that the tests which revealed the contamination were conducted in 1984, two years prior to the initiation of this suit. Of the four families of plaintiffs, only C. N. White (B. K. White) discovered the contamination as early as 1979 or 1980. Two of the remaining families, the Wilsons and Hills, were assured by state and local environmentalists that their water supply was untainted until June 1984. The Pagura family discovered the gasoline in their water in 1985, two years prior to intervening in the lawsuit.

The defendants who plaintiffs sued are identified as follows: McLeod Oil Company, Inc., the company which they originally believed had supplied gasoline to the Mini Mart during the years in question and also owned the tanks into which the gasoline was placed (note that the suit against McLeod has been voluntarily dismissed); Loren A. Tompkins, the president of McLeod Oil as well as Midway Oil who arranged for the supplying of gasoline to the underground tanks; Adrian Simmons, owner of the Mini Mart property between 1976 and 1981, and operator of the Simmons Mini Mart and gas station between 1976 and 1979; George Riggan, owner of the Mini Mart property from 1981 until his death in 1988 (his estate currently owns the property, but the convenience store operations have ceased and no gasoline has been sold there since around 1986); and Amoco Oil Company which plaintiffs have also voluntarily dismissed.

McLeod Oil Co. and its president Loren Tompkins instituted third-party claims against the following third-party defendants: Hilda M. Baxter, individually and as personal representative for Clifton E. Baxter, who owned the Mini Mart property from 1965 until 1976, who did not use the underground tanks at the subject of

WILSON v. McLEOD OIL CO.

[95 N.C. App. 479 (1989)]

this dispute; Alamance Oil Co., which delivered gas to the Baxters' tanks while they operated the Mini Mart (the tanks were removed in 1986 by the owner George Riggan); and the Warren defendants, who purchased a small store and gasoline station located diagonally across the street from the Mini Mart in 1971. Alamance Oil Co. supplied gas to the underground storage tanks on the Warren property at various times between 1972 and 1973 while members of the Warren family operated or leased the store. These tanks were removed in 1987 and contained water and gasoline at the time of their removal. The vent pipes were broken and the soil and groundwater around these tanks were contaminated.

The evidence introduced at the hearings on defendants' motions for summary judgment included the deposition of Brenda Joyce Smith. Ms. Smith is a hydrogeological regional supervisor with the North Carolina Department of Natural Resources and Community Development (NRCD) in the Winston-Salem regional office. She explained in her deposition that the duties of her position included a combination of supervisory management and technical functions. She also explained that she is responsible for the groundwater section work which is done in her region. In her capacity as hydrogeological supervisor, Ms. Smith was responsible for overseeing the investigations of the Hopedale area, including supervising the drilling of the test wells and other kinds of geologic work to assess the extent and nature of the contamination.

In March 1987, the test wells were installed in the area of the contamination. The decision concerning where to place the wells was based upon the locations of the potential contamination sources, the affected wells, and the topography of the area. The general objective was to locate monitor wells which were downhill or down gradient from the potential sources. She identified the potential contamination sources as the underground storage tanks which had been in place at the Mini Mart and the underground storage tanks which had been located at the abandoned gas station on the Warren property. They were considered potential sources because they had stored the contamination product which had been identified—gasoline. The test wells were dug on 31 March 1987, 1 and 2 April 1987, and 6 and 7 April 1987.

As a result of this investigation, a report dated 9 July 1987 was compiled, under the direction of Ms. Brenda Smith. The results of this investigation appear in part as follows:

WILSON v. McLEOD OIL CO.

[95 N.C. App. 479 (1989)]

*Groundwater Monitor Wells*

A total BTX (Benzene, Toluene, Xylene) concentration of 5,230 ug/1 (ppb) was present in monitor well B7, located in front of the abandoned store on the O. A. Warren property. A total BTX concentration of 65,600 ug/1 was present in monitor well B10, located on the Mini-Mart property at the site of the McLeod Oil Company USTs. No BTX was detected in the other monitor wells. Slight concentrations of petroleum hydrocarbons were detected in monitor well B2, located behind the Mini-Mart; monitor well B3, located on the Wilson property; monitor well B11, located on the Long property and intended to be the upgradient monitor well; and monitor well B13, located in the front yard of the Hill home. No volatile organic compounds were detected in monitor well B5, located on the Long property near the intersection of SR 1735 and SR 1737; monitor well B4, located in front of the Mini-Mart; and monitor well B12, located on the Mini-Mart property at the site of the excavated Alamance Oil Company USTs.

. . . .

*Water Supply Wells*

Fluctuating concentrations of varying gasoline constituents were detected in VOA samples collected from the White, Wilson, and Hill water supply wells in February 1985, June 1986, and April 1987. The concentration of volatile organic compounds in these samples varied from 0.06 ppb to 490 ppb in the White well, from 0.14 ppb to 580 ppb in the Wilson well, and from 0.11 ppb to 14 ppb in the Hill well. Specific compounds identified and concentrations detected are summarized in Table 1.

CONCLUSIONS

The results of this investigation indicate multiple contamination sources for this incident:

1. USTs [underground storage tanks] at the abandoned store on the O. A. Warren property, evidenced by 5,230 ppb [parts per billion] BTX [benzene, toluene, and xylene] in MW [monitor ̀well]-B7;

2. McLeod Oil Company USTs at Simmons Mini-Mart, evidenced by 65,600 ppb BTX in MW-B10;

WILSON v. McLEOD OIL CO.

[95 N.C. App. 479 (1989)]

3. Alamance Oil Company USTs at Simmons Mini-Mart, evidenced by 1,670 ppb BTX in HA-3 and 5,700 ppb BTX in HA-4.

Based upon this evidence as well as the affidavits of the parties in support of their motions for summary judgment, the trial court entered summary judgment on behalf of all remaining defendants and third-party defendants.

From the order entering summary judgment for defendants Tompkins, Simmons, Estate of Riggan and third-party defendants Alamance Oil Co., Otis A. Warren and Glenda Warren, plaintiffs appealed. From the orders entering summary judgment for third-party defendants Alamance Oil Co., Hilda Baxter, and Otis and Glenda Warren, defendants McLeod Oil Co., and Loren Tompkins appealed. Defendant Adrian Simmons appealed from the order entering summary judgment for third-party defendants Alamance Oil Co. and Hilda Baxter. Defendant Estate of George Riggan appealed from the order entering summary judgment in favor of defendants Loren Tompkins, Adrian Simmons and the Warren third-party defendants. The Estate of Riggan has since withdrawn its appeal as to all Warren third-party defendants except Otis and Glenda Warren, present owners of the Warren property. We shall consider each appeal in turn.

II

*Plaintiffs' Appeal*

By their appeal, plaintiffs present five questions for this Court's review which can be reduced to two basic issues: (1) whether the trial court erred by entering summary judgment on behalf of defendants and third-party defendants because plaintiffs presented genuine issues of material fact on the questions of violations of G.S. sec. 143-215.93 and regarding noncompliance with North Carolina common law, and because defendants failed to show that plaintiffs' claims were time-barred; and (2) whether the trial court abused its discretion in denying plaintiffs' motion to amend their complaint. Because the expiration of the statute of limitations or repose prior to institution of suit would render all other issues moot and would operate to affirm the court's entries of summary judgment, *Brantley v. Dunston*, 10 N.C. App. 706, 179 S.E.2d 878 (1971), we first consider this part of plaintiffs' appeal.

WILSON v. McLEOD OIL CO.

[95 N.C. App. 479 (1989)]

A

*Statute of Limitations and Repose*

In response to plaintiffs' allegations, defendants against whom plaintiffs brought this appeal, Tompkins, Simmons, and Estate of Riggan, all asserted defenses of statute of limitations and repose, based upon G.S. secs. 1-15, 1-50, 1-52 and 1-56. It is well settled that the statute of limitations does not begin to run until the aggrieved party becomes entitled to maintain an action. *Raftery v. Wm. C. Vick Constr. Co.*, 291 N.C. 180, 230 S.E.2d 405 (1976). In addition, the classification of a cause of action for determining the applicable statute of limitations depends upon the substantive nature of the case. The right asserted is determinative, as opposed to the relief sought. *New Amsterdam Cas. Co. v. Waller*, 301 F.2d 839 (4th Cir. 1962).

[1] We find several provisions of G.S. sec. 1-52 to be the applicable statute of limitations based upon the substantive nature of the case *sub judice*. They appear as follows:

Sec. 1-52. Three years.

Within three years an action—

    . . . .

(2) Upon a liability created by statute, either state or federal, unless some other time is mentioned in the statute creating it.

(3) For trespass upon real property. When the trespass is a continuing one, the action shall be commenced within three years from the original trespass, and not thereafter.

    . . . .

(5) For criminal conversation, or for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated.

    . . .

[2] According to the evidence before us, plaintiffs Hill and Wilson were assured until May 1984 by state and local officials that no contamination was present in their wells. They were informed in June 1984 that their wells were contaminated. We believe that their cause of action accrued at this time. Prior to June 1984, they

were not entitled to maintain an action against anyone. *Raftery, supra.* Because they instituted this civil action in July 1986, within three years from the time their cause of action accrued, G.S. sec. 1-52, we hold that their claims were not time-barred.

The Pagura family alleged that they did not notice any possible contamination until 1985. The earliest reports by the NRCD which indicated that their water contained nonorganic substances were compiled in 1985. They moved to intervene in the case in December 1987, well before the three-year limitations period had expired.

[3] Insofar as this appeal concerns plaintiff White, we must hold that her claims are time-barred. Tests were performed on plaintiff White's water on 18 September 1979, 14 February 1980, 29 and 31 July 1980 and on 21 August 1980. The earliest tests performed indicated that the water contained "gasoline-like" hydrocarbons. Employees of the NRCD discussed the problem of contamination with plaintiff White on 13 November 1980. She testified in her deposition that the 1979 test showed the presence of gas and that she was told that fact at that time.

It is clear to us that B. K. White's (C. N. White incorrectly appears on all the documents) cause of action accrued in 1979. Her failure to commence legal recourse before 1986 results in its bar. The presence of the gasoline in her water has been a continuing trespass since that time within the meaning of *Matthieu v. Gas Co.,* 269 N.C. 212, 152 S.E.2d 336 (1967), patently and without interruption, as opposed to a recurring trespass as defined in *Galloway v. Pace Oil Co.,* 62 N.C. App. 213, 302 S.E.2d 472 (1983), and *Oakley v. Texas Co.,* 236 N.C. 751, 73 S.E.2d 898 (1953). We therefore affirm the court's entry of summary judgment with respect to plaintiff White only.

## B

### Statutory and Common Law Claims

[4] Plaintiffs premise liability upon violations of G.S. sec. 143-215.93, negligence in the operation, maintenance, storage and/or marketing of gasoline, nuisance and trespass. Defendants' and third-party defendants' motions for summary judgment were granted.

A motion for summary judgment is properly allowed when the pleadings, affidavits and other materials before the court establish that there is no genuine issue of material fact to be de-

WILSON v. McLEOD OIL CO.

[95 N.C. App. 479 (1989)]

cided and that the movant is entitled to judgment as a matter of law. *Cashion v. Texas Gulf, Inc.*, 79 N.C. App. 632, 339 S.E.2d 797 (1986). Summary judgment is also appropriate where a fatal defect in the claim or defense is shown, such as the inability to establish every element of a particular claim, or expiration of the statute of limitations. *Thompson v. Insurance Co.*, 44 N.C. App. 668, 262 S.E.2d 397 (1980).

Plaintiff introduced evidence at the summary judgment hearing which tends to show that the Mini Mart property was a potential source of contamination of the plaintiffs' wells. Simmons owned the property from January 1976 until June 1981, at which time he sold it to Riggan. Prior to selling the property, Simmons operated a gas station at the site until 1979. Simmons had an agreement with Midway Oil Company under which Midway provided several tanks and gasoline for tanks at that site. Tompkins, as an officer of Midway, signed the contracts to provide gasoline to the Simmons site; generally oversaw the conducting of business there by Midway which serviced the tanks and equipment and performed repairs; Tompkins was also responsible for maintaining and servicing the accounts and dealing with any loss of product and the supplying of gasoline to the site. A forecast of the evidence further tends to show that the flow of contaminant into the aquifer began before 1981 and continued seeping into the acquifer after the Mini Mart property was acquired by Riggan from Simmons in 1981. The NRCD began an investigation into the matter, and based upon its discoveries, issued a notice of violations of the Oil Pollution and Hazardous Substances Control Act to Adrian Simmons, George Riggan and Loren Tompkins in 1985.

On 9 July 1987, after more extensive drilling and scientific study of the plaintiffs' wells, the NRCD issued a report which identified three possible contamination sources: underground storage tanks on the Warren property, and underground storage tanks at the Mini Mart, some owned by McLeod Oil Co. and others owned by Alamance Oil Co. (These sources are described in greater depth, *infra.*)

G.S. sec. 143-215.93 provides the following:

Any person having control over oil or other hazardous substances which enters the waters of the State in violation of this Part shall be strictly liable, without regard to fault, for damages to persons or property, public or private, caused

by such entry, subject to the exceptions enumerated in G.S. 143-215.83(b).

The private right of action for violation of this section is set forth in G.S. sec. 143-215.94 as follows:

> In order to provide maximum protection for the public interest, any actions brought pursuant to G.S. 143-215.88 through 143-215.91(a), 143-215.93 or any other section of this Article, for recovery of cleanup costs or for civil penalties or for damages, may be brought against any one or more of the persons having control over the oil or other hazardous substances or causing or contributing to the discharge of oil or other hazardous substances. All said persons shall be jointly and severally liable, but ultimate liability as between the parties may be determined by common-law principles.

In *Biddix v. Henredon Furniture Industries*, 76 N.C. App. 30, 331 S.E.2d 717 (1985), this Court recognized plaintiff's private right of action for common law nuisance and trespass based upon a violation of G.S. sec. 143-215.93 notwithstanding the statutory enactment of the Clean Water Act. The Court stated that

> [b]ased on the trial court's order, plaintiff's only remedy would be to report any NPDES [National Pollutant Discharge Elimination System] violation by defendant to NRCD without legal recourse for the alleged damages to his property. We cannot conceive that the General Assembly intended any such result in adopting the Clean Water Act. We agree with defendant that the General Assembly has provided a comprehensive statutory scheme for remedial correction of water pollution as well as other forms of industrial and private pollution. Preservation of the common law actions of nuisance and trespass to land for industrial discharges in violation of the laws of this state is consistent with the General Assembly's enactments rather than inconsistent with them as argued by defendant. By retaining the common law civil actions of nuisance and trespass to land, the legislative intent to maintain the waters of this state in a clean and wholesome state for present and future generations is strengthened.

*Biddix* at 40, 331 S.E.2d at 724. Quoting *Springer v. Schlitz Brewing Co.*, 510 F.2d 468 (4th Cir. 1975), the *Biddix* Court also stated that North Carolina

[i]s firmly committed to the proposition that the 'violation of a statute designed to protect persons or property is a negligent act, and if such negligence proximately causes injury, the violator is liable.' . . . The statute or ordinance, serving as a legislative declaration of a standard of care, creates a private right not to be harmed by its violation.

*Biddix* at 41, 331 S.E.2d at 724.

Based upon these principles, the allegations of plaintiffs' complaint, and the forecast of evidence which the trial court used to make its ruling, we conclude that plaintiffs presented sufficient evidence to withstand defendants' motions for summary judgment. They produced evidence sufficient to proceed on the theories of G.S. sec. 143-215.93, nuisance, trespass, and negligence. The trial court's entries of summary judgment as to defendants Tompkins, Adrian Simmons, and Estate of George Riggan were improvidently granted. There exists questions of material fact yet to be decided as to these defendants. (The orders entering summary judgment for the third-party defendants shall be considered *infra*.)

## C

### Motion to Amend Complaint

[5] On 22 March 1988 plaintiffs filed a motion to amend their complaint, alleging that they did not become fully aware that the NRCD study identified an additional source of the contamination, i.e., the Warren property until January 1988. They sought to institute direct claims against third-party defendants Warren and Alamance Oil Co. In an order entered 12 April 1988, the court denied plaintiffs' motion finding that granting it would result in "delay, additional expense and prejudice to the defendants and third-party defendants and was not timely filed."

A motion to amend is addressed to the sound discretion of the trial court and should be reversed only upon a finding of abuse of discretion. *Carolina Garage Co., Inc. v. Holston*, 40 N.C. App. 400, 253 S.E.2d 7 (1979). The report of the NRCD is dated 9 July 1987 although plaintiffs assert that they did not become aware of the nature and extent of the defendants Warren and Alamance Oil Co.'s involvement until January 1988. Based upon this information, we find no reason to reverse the judge's order denying plaintiffs' motion to amend. The trial court committed no abuse of discretion.

III

*McLeod Co. and Loren Tompkins' Appeal*

[6] By their appeal McLeod and Tompkins present an alternative argument to the one advanced in their appellees' brief. In short, if this Court rejected their contention that the trial court committed no error in entering summary judgment in Tompkins' favor (which we did) then they alternatively argue that the trial court should reverse its entries of summary judgment in favor of third-party defendants Hilda Baxter, Alamance Oil, and the Warren defendants. We believe that the trial court properly entered summary judgment in favor of each of these third-party defendants.

The recurring argument that plaintiffs' claims are time-barred is applicable to these three defendants. Although plaintiffs have attempted to retract their original argument that a major loss of oil which occurred in 1978 at the Mini Mart site was the beginning point of their well contamination, we are inclined to accept their original argument. It is primarily due to this allegation that we have become convinced that the claims against these three sets of defendants must fail.

Hilda Baxter and her husband owned the Mini Mart property between January 1962 and January 1976. Until 1974, they sold gasoline from that site. They had discontinued the sale of gasoline nearly four years before the major spill occurred. Also, the contamination of the remaining plaintiffs' (Wilson, Hill and Pagura) waters was not confirmed until 1984 and 1985.

Alamance Oil Co. last delivered gasoline to the Mini Mart in 1974. Alamance Oil Co. purchased the Warren property on 25 January 1968 and sold it on 21 September 1971 to J. R. Warren. Alamance Oil Co. supplied gasoline to the Warren tenant from 6 October 1972 to 30 March 1973.

Insofar as this argument concerns the Warren defendants, we have no evidence before us which would indicate that any of the Warren defendants ever had or exercised control over oil or hazardous substances within the meaning of G.S. sec. 143-215.93. Their tenant, not the Warrens themselves, operated the selling of gasoline. Because of this fact plaintiffs cannot show the required causal connection between the Warrens' conduct and the contamination of which they complain. *See Dedham Water Co. v. Cumberland Farm, Inc.*, 689 F.Supp. 1233 (D. Mass. 1989).

**WILSON v. McLEOD OIL CO.**

[95 N.C. App. 479 (1989)]

In addition, G.S. sec. 1-52(16) provides that "no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action." This cap places an outer limit before which an action may be brought. In the case of each of these three defendants, their last acts, if any acts exist, occurred over ten years from the time this action was ultimately brought. Therefore, plaintiffs' claims against them are time-barred. The trial court therefore correctly entered summary judgment in favor of these three sets of defendants.

## IV

### *Adrian Simmons' Appeal*

Because we have disposed of the identical issues defendant Simmons raises in his appeal in our discussion of McLeod Oil Co. and Tompkins' appeal, *supra*, i.e., the propriety of the entry of summary judgment for third-party defendants Alamance Oil Co. and Baxter, we find it unnecessary to consider this appeal. (Refer to Section III of this opinion.)

## V

### *Estate of George Riggan's Appeal*

Because we have previously resolved all the questions raised by this appeal we find it unnecessary to review them again. (Refer to Section II for a discussion of the statute of limitations, and the denial of plaintiffs' motion to amend their complaint. Refer to Section III for a discussion of the entry of summary judgment for the third-party defendants.)

## VI

### *Conclusions*

Therefore, we hold that the trial court correctly entered summary judgment for the third-party defendants, and for all defendants against the claims of B. K. White. The trial court incorrectly entered summary judgment for defendants Tompkins, Simmons, and Estate of Riggan.

Reversed in part; affirmed in part.

Judge BECTON concurs.

Judge WELLS concurs in part and dissents in part.

Judge WELLS dissenting in part and concurring in part.

From my review of the forecast of evidence in this immensely complicated case, I do not agree that summary judgment was not properly entered for defendant Loren A. Tompkins nor that summary judgment was properly entered for the third-party defendants Warren, as to the claims other than those of B. K. White.

In otherwise concurring, I wish to emphasize my position that (1) there remain issues of fact as to the identity of the actors in the alleged escape or leakage of oil or gasoline, and (2) that only those actors responsible for escape or leakage may be liable under the theories advanced in this case. I do not accept the possible inference that a subsequent owner of facilities from which a *previous* escape or leakage has occurred may be liable for continued seepage resulting from the previous escape or leakage over which he had no control.