The undersigned have reviewed the prior Opinion and Award and its amendment based upon the record of the proceedings before Deputy Commissioner Edward Garner, Jr. and the briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; or to amend the Opinion and Award.
* * * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer.
3. The parties stipulated that the following documents may be received into evidence without further authentication.
 a. Letter of 8 August 1990, from Fidelity and Casualty Company of New York to Catawba County Rescue Association.
b. Incident report from plaintiff, dated 13 November 1990.
 c. Memo of 14 November 1990, from Fidelity and Casualty Company of New York to Catawba County Rescue Association.
d. Application for coverage of Catawba County Rescue
 e. Information page from Liberty Mutual policy, dated 20 November 1990.
 f. Premium Audit by Fidelity and Casualty Company of New York, dated 13 December 1990.
 g. Form 19 Report of Injury and fax cover sheet, dated 18 December 1990 (2 pages).
 h. Letter of 3 January 1991, from Continental Loss Adjusting Catawba County Rescue Association.
 i. Policy cover sheet, Fidelity and Casualty Company of New York, dated 22 October 1989.
j. Form 18 Notice, dated 22 February 1991.
 k. Copies of three checks to Fidelity and Casualty Company of New York (4 pages).
4. The parties also stipulated to the following facts:
 a. Fidelity and Casualty Company of New York ("Fidelity Casualty") was the carrier of Workers' Compensation insurance for the Catawba County Rescue Association, from 22 October 1987 to 22 October 1990.
 b. On 8 August 1990, Fidelity Casualty offered to renew its policy number 28C866885189J for the Catawba County Rescue Association, which was to expire on 22 October 1990, in return for a deposit premium of $2,921.00.
 c. The offer to renew, dated 8 August 1990, stated that the premium must be remitted by 22 October 1990, or coverage could lapse. A copy of the offer was sent to the agent for Catawba County Rescue Association, Carolina Insurance Realty
 d. Both the Catawba County Rescue Association and its agent received the offer to renew.
 e. 22 October 1990, passed without payment being tendered by Catawba County Rescue Association, and the coverage lapsed.
 f. On 9 November 1990, six checks totaling $2,921.00 were sent to Fidelity Casualty by the Catawba County Rescue Association. These checks were subsequently accepted and deposited by the carrier.
 g. On 13 November 1990, employee-plaintiff was a volunteer EMT with Hickory Rescue Squad, a member of the Catawba County Rescue Association. His average weekly wage from his regular job was $190.00, which yields a compensation rate of $126.67 per week.
 h. On 13 November 1990, employee-plaintiff reported to his supervisor that he sustained an injury by accident arising out of and in the course of his duties as a volunteer EMT, fracturing his right wrist.
 i. On 20 November 1990, the Catawba County Rescue Association received a letter from Fidelity 
Casualty dated 14 November 1990, which stated that the policy had not been renewed and the deposit would be returned. The deposit of $2,921.00 was returned to the Catawba County Rescue Association by Fidelity Casualty. No date was given as to when this check was returned.
 j. On 19 November 1990, the Catawba County Rescue Association submitted an application for replacement coverage that was assigned to Liberty Mutual Insurance Company by the Rate Bureau, effective November 20, 1990.
 k. On 13 December 1990, Fidelity Casualty performed a premium audit, for the period October 1989 to October 1990, which resulted in no additional premium being due.
 l. On 18 December 1990, Michael Talbert, finance director of Catawba County faxed a Form 19 Report to injury, with respect to employee-plaintiff's injury, to Continental Loss Adjusting in Columbia, South Carolina, the adjusting company for Fidelity Casualty. This was the first notice of Fidelity Casualty and Continental Loss Adjusting of employee-plaintiff's injury.
 m. On 19 December 1990, Norma Spencer, of Continental Loss Adjusting, took a recorded statement from employee-plaintiff and advised him there was no coverage in effect for the Catawba County Rescue Association on 13 November 1990.
 n. On 3 January 1991, Continental Loss Adjusting denied the claim because the Fidelity and Casualty policy had expired on 22 October 1990.
* * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On 13 November 1990, plaintiff suffered an injury by accident arising out of and in the course of his employment when he injured his right wrist or aggravated a preexisting injury to his right wrist.
2. Plaintiff had fractured his wrist several years earlier but it had never healed.
3. Plaintiff had been seeing Dr. Pekman of the Hickory Orthopedic Clinic where he had x-rays in August of 1990 which "demonstrate a nonunited scaphoid fracture" and had x-rays in November following his industrial accident show "apparent displacement of this nonunion."
4. Plaintiff's account in his stipulated statement, Dr. Pekman's account and the Charlotte Orthopaedic Specialist account all indicate that the 1988 fracture never completely healed. The fall in November of 1990 displaced the parts of the unhealed fracture and caused the incapacitating problem. Dr. Perlik says "I would concur with Dr. Pekman that there appears to have been some displacement of the fracture between the x-ray taken in August and November 1990." Both doctors foresee the possibility of reconstructive surgery.
5. Plaintiff is not seeking temporary total disability but is seeking medical attention necessary to correct his condition which was aggravated by the work-related fall and permanent partial disability after maximum medical improvement.
* * * * * * * * * * * *
Based upon the findings of fact, The Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-2(5) specifically mentions "disabling injury or death to a volunteer fireman or member of an organized rescue squad" and sets the average weekly wage to be that of what he was "earning in the employment wherein he principally earned his livelihood as of the date of the injury. Here, plaintiff earned $190.00 per week.
2. Since plaintiff suffered an injury by accident arising out of and in the course of the employment, he is entitled to medical benefits pursuant to N.C. Gen. Stat. § 97-25. Plaintiff should also receive compensation for any time out of work for the necessary medical treatment and surgery. If there remains any permanent partial disability after the surgery, this should be compensated for also. N.C. Gen. Stat. § 97-31.
3. North Carolina law provides that an insurer can waive its right to declare an insurance forfeiture. Hicks v. HomeSecurity Insurance Company, 226 N.C. 614, 39 S.E. 914 (1946). Waiver can be found even in situations where the terms call for automatic policy lapse. Wiles v. Nationwide Insurance Co.,334 F.2d 296.
4. An insurer's waiver of forfeiture provisions is predicated on knowledge on the part of the insurer of the pertinent facts, and conduct thereafter inconsistent with an intention to enforce the condition. Goulden v. Inter-OceanInsurance Co., 248 N.C. 161, 102 S.E.2d 846 (1958). Under North Carolina law the insurer is charge with knowledge of all facts within its files including the expiration date of its policy. Id.
5. In this case, the insurance company, after indicating that it could not issue a policy until the day following receipt of payment, cashed and deposited the tendered checks, an act clearly inconsistent with its alleged intention not to renew the policy. The acceptance of late premiums by an insurer waives its right to demand forfeiture of the policy for nonpayment. Thompsonv. Northwestern Security Life Insurance Co., 44 N.C. App. 668,262 S.E.2d 397 (1980).
Therefore, by accepting and depositing the Association's tendered premium, the insurer waived its right to not renew the policy and is thereby liable for coverage of the accident in this case.
6. An insurance binder is an insurer's bare acknowledgment of an agreement to protect the insured against casualty until a formal policy can be issued. Moore v. Adams Electric Co.,264 N.C. 667, 142 S.E.2d 659 (1965). In the instant case, the terms of the renewal notice gave enough information to be construed as the basis of a binder. Wiles v. Mullinax, 270 N.C. 661,155 S.E.2d 246 (1967).
Besides an outline of the extent of coverage, a valid binder requires an offer and acceptance like any other contract. BelksDepartment Store of New Bern v. George Washington Fire InsuranceCo., 208 N.C. 267, 180 S.E.2d 267 (1935). In this case, the tender of the constitutes an offer and the insurer's and depositing of that sum represents an acceptance. Therefore, the insurer could not cancel this binder until it complied with the provisions of N.C. Gen. Stat. 97-99 which requires a thirty day notice of an intent to take such action.
7. Since the Fidelity and Casualty Insurance Company of New York notified the employer on 8 August 1990, that it was prepared to renew the Workers' Compensation insurance policy based on an annual premium of $2,921.00, it should not be permitted to decline this offer after the premiums are paid and are accepted by the insurance carrier and also deposited in the insurance carrier's account. The 22 October 1990, deadline is nothing more than an expiration date of the policy.
No where on the notice does it indicate that if the premiums are not received by 22 October 1990, it would be too late to reinstate the policy. It only says that to avoid a possible lapse of coverage, please forward your payment by check or money order no later than 22 October 1990. Therefore, the insurance carrier is estopped from denying coverage in this case. Thompson v.Northwestern Security Life Insurance Co., 44 N.C. App. 668,262 S.E.2d 397 (1980).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants' motion to dismiss the Fidelity and Casualty Insurance Company of New York from this case is hereby DENIED. The Fidelity and Casualty Insurance Company of New York is hereby responsible for covering this claim.
2. The defendant-carrier shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, including the required surgery, when bills have been submitted through the carrier to the Industrial Commission and approved by the Commission.
3. Defendant-carrier shall pay temporary total disability benefits, if required during and after the surgery, at the compensation rate of $260.00 per week until plaintiff reaches maximum medical improvement or is able to return to work.
4. Defendant-carrier shall also pay any permanent partial disability due plaintiff once he is rated by his treating physician. However, defendant carrier shall be entitled to a second opinion as to the rating, if any, should it desire one.
5. Any attorney's fee in this case is deferred pending final resolution of this case. In the event that plaintiff receives temporary total disability benefits or permanent partial disability benefits, counsel for plaintiff is entitled to twenty-five (25) percent of any award. Said twenty-five 25 percent shall be deducted from the award and be paid directly to plaintiff's counsel by the carrier, should any benefits materialize.
6. Defendant-carrier shall pay the costs due the Commission.
 S/ __________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ JAMES J. BOOKER COMMISSIONER
S/ __________________ COY M. VANCE COMMISSIONER